**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Austin P. Van (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Co-Led Attorneys for Lead Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GEORGE MESSIHA and JUAN A. VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>        v.<br><br>CITRIX SYSTEMS, INC., ROBERT M. CALDERONI, NANCI E. CALDWELL, MURRAY J. DEMO, THOMAS E. HOGAN, MOIRA A. KILCOYNE, ROBERT E. KNOWLING, JR., PETER J. SACRIPANTI, and J. DONALD SHERMAN,<br><br>                                    Defendants. | Case No. 0:22-cv-62327-RAR<br><br>**CLASS ACTION**<br><br>Hearing Date: __, 2024<br>Time: __ AM<br>Judge: Honorable Rodolfo A. Ruiz II<br>Courtroom 11-2 (Ferguson) |

## NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

- i -

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

**PLEASE TAKE NOTICE** that on _____, 2024 at _____.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Rodolfo A. Ruiz II, United States District Judge for the Southern District of Florida, located at Wilkie D. Ferguson, Jr. United States Courthouse, 400 N. Miami Avenue, Miami, FL 33128, Courtroom 11-2, Lead Plaintiffs Juan A. Vargas and George Messiha, and additional Plaintiff Brandon Nuckel ("Plaintiffs") will, and do, move this Court, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(g), for an Order:    (1) preliminarily approving the proposed settlement set forth in the Stipulation and Agreement of Settlement dated July 15, 2024 (the "Stipulation"); (2) certifying a settlement class as provided for in the Stipulation; (3) appointing JND Legal Administration ("JND") as Claims Administrator; (4) approving the proposed form and manner of disseminating notice to the Settlement Class; (5) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Class Counsel's application for attorneys' fees and expenses; and (6) setting a date for the final approval hearing.

This Motion is based on the following memorandum of points and authorities; the Stipulation and exhibits thereto (filed herewith); the accompanying Proposed Preliminary Approval Order (filed herewith); the Court's file in this action, and any additional evidence or argument that the Court may request.

Dated:  July 15, 2024                           Respectfully submitted,

                                                **POMERANTZ  LLP**

                                                */s/ Austin P. Van*
                                                Jeremy A. Lieberman
                                                Austin P. Van
                                                600 Third Avenue, 20th Floor
                                                New York, New York 10016
                                                Telephone: (212) 661-1100
                                                Facsimile: (212) 661-8665
                                                jalieberman@pomlaw.com

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

avan@pomlaw.com

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter

25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Co-Lead Counsel for the Proposed Class*

**MILLER SHAH LLP**

Nathan C. Zipperian
Jayne A. Goldstein
2103 N. Commerce Pkwy.
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
nczipperian@millershah.com
jagoldstein@millershah.com

*Liaison Counsel for the Proposed Class*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

## TABLE OF CONTENTS

I.     INTRODUCTON ............................................................................................... 1

II.    FACTUAL BACKGROUND ............................................................................ 2

III.   PROCEDURAL HISTORY .............................................................................. 3

IV.   THE SETTLEMENT ....................................................................................... 5

V.    SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......................... 6

      A.    Standards for Preliminary Approval ..................................................... 6

      B.    Plaintiffs and Lead Counsel Adequately Represented the Settlement Class .......... 8

      C.    The Proposed Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel ........................................................... 9

      D.    The Relief Provided for The Settlement Class Is Adequate ............................... 10

            1.    The Settlement Amount is Within the Range of Reasonableness ............. 11

            2.    The Costs, Risks, and Delay of Trial and Appeal ..................................... 12

            3.    Other Factors Established by Rule 23 Support Preliminary Approval ..... 14

      E.    All Settlement Class Members are Treated Equitably ......................................... 16

      F.    The Remaining Eleventh Circuit Factors Strongly Support Preliminary Approval .................................................................................. 18

            1.    The Stage of Proceedings at Which Settlement was Achieved ............... 18

            2.    Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement .......................................................... 19

VI.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................ 20

VII.  THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ........................ 23

VIII. THE PROPOSED SCHEDULE ..................................................................... 24

IX.   CONCLUSION .............................................................................................. 25

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...................................................................................................20

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ............................................................................. *passim*

*Carpenters Health & Welfare Fund v. The Coca-Cola Co.*,
2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ......................................................12

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .............................................................................19

*Erickson v. Jernigan Cap., Inc.*,
692 F. Supp. 3d 114 (S.D.N.Y. 2023), leave to appeal denied, No. 23-1350,
2024 WL 748759 (2d Cir. Feb. 21, 2024)..............................................................22

*Exum v. Nat'l Tire & Battery*,
2020 WL 1670997 (S.D. Fla. Apr. 6, 2020) ............................................................6

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ........................................................16

*Francisco v. Numismatic Guar. Corp.*,
2008 WL 649124 (S.D. Fla. Jan. 31, 2008) .....................................................18, 19

*IBEW v. Int'l Game Tech., Inc.*,
2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..........................................................11

*In Bonner v. City of Prichard, Ala.*,
661 F.2d 1206 (11th Cir. 1981) (*en banc*) ..........................................................19

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................................14

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ......................................................16

*In re Catalina Mktg. Corp. Sec. Litig.*,
2007 WL 9723529 (M.D. Fla. July 9, 2007) ........................................................18

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

*In re: Checking Account Overdraft Litig.*,
2013 WL 11319392 (S.D. Fla. Aug. 5, 2013) ........................................................................12

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011) ...........................................................................................10

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................................12

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ................................................................................................16

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) .......................................................................10

*In re Cigna Corp. Sec. Litig.*,
2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) .......................................................................20

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ................................................................................................18

*In re Health Ins. Innovations Sec. Litig.*,
2020 WL 10486665 (M.D. Fla. Oct. 21, 2020) ......................................................................8

*In re Health Ins. Innovations Sec. Litig.*,
2020 WL 10486666 ...........................................................................................................8, 24

*In re Health Ins. Innovations Sec. Litig.*,
2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ......................................................................11

*In re HealthSouth Corp. Sec. Litig*,
257 F.R.D. 260 (N.D. Ala. 2009) .........................................................................................22

*In re Healthsouth Corp. Sec. Litig.*,
334 F. App'x 248 (11th Cir. 2009) .......................................................................................16

*In re: Managed Care Litig. v. Aetna*,
2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) .....................................................................16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................................13

*In re OCA, Inc. Sec. & Deriv. Litig.*,
2009 WL 512081 (E.D. La. Mar. 2, 2009) ...........................................................................14

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................................13

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
   C.A. No. 20-275-MN-JLH, 2023 WL 1931201 (D. Del. Jan. 3, 2023) ...................... 20, 21, 22

*In re Recoton Corp. Sec. Litig.*,
   248 F.R.D. 606 (M.D. Fla 2006) ........................................................................................... 21

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001) .................................................................................. 6

*In re: Terazosin Hydrochloride Antitrust Litig.*,
   99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) ................................................................... 16

*In re Theragenics Corp. Sec. Litig.*,
   205 F.R.D. 687 (N.D. Ga. 2002) .......................................................................................... 21

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................................ 9

*Morgan v. Public Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ................................................................................. 10

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .............................................................................................................. 24

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016), *aff'd*, 2017 WL 6398014 (6th Cir. Nov.
   27, 2017) ............................................................................................................................... 15

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................................. 19

*Pritchard v. APYX Med. Corp.*,
   2020 WL 6940765 (M.D. Fla. Nov. 6, 2020) ....................................................................... 18

*Ret. Sys. v. Southern Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019) ...................................................................................... 8, 21

*Reyes v. AT&T Mobility Servs., LLC*,
   2013 WL 12219252 (S.D. Fla. June 21, 2013) ..................................................................... 15

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................................................ 14

*Rooney v. EZCORP, Inc.*,
   330 F.R.D. 439 (W.D. Tex. 2019) ........................................................................................ 22

- vii -

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) ................................................................................9, 11

*Smith v. Wm. Wrigley Jr. Co.*,
    2010 WL 2401149 (S.D. Fla. June 15, 2010) ...............................................................6

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ...............................................................................12

*Thorpe v. Walter Inv. Mgmt., Corp.*,
    2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) ............................................................20

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) .............................................................................14

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ......................................................................................19

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ..............................................................18

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988) ...........................................................................19

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ..................................................................................21

**Statutes**

17 C. F. R. § 240.14a-9 ................................................................................4, 20, 21, 22

15 U.S.C. § 77z-1 .........................................................................................................17

15 U.S.C. § 78u-4 ...................................................................................................17, 23

Private Securities Litigation Reform Act of 1995 ..................................................17, 23

Securities Exchange Act of 1934 ...............................................................4, 20, 21, 22

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

**Other Authorities**

*Securities Class Action Settlements—2022 Review and Analysis* (Cornerstone Research 2023), available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf ............................................................................................1, 11

Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (Oct. 2017)................................................16

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

## I.    INTRODUCTION

Lead Plaintiffs Juan A. Vargas and George Messiha, and additional Plaintiff Brandon Nuckel ("Plaintiffs"), individually and on behalf of all other persons similarly situated, are pleased to present, for the Court's preliminary approval, a $17.5 million cash settlement resolving all claims in this Litigation (the "Settlement"), as set forth in the Stipulation and Agreement of Settlement dated July 15, 2024 (the "Stipulation").  Plaintiffs respectfully request that the Court initiate the approval process by entering an order, substantially in the form filed herewith (the "Preliminary Approval Order"): (1) preliminarily approving the proposed settlement set forth in the Stipulation;  (2) certifying a settlement class as provided for in the Stipulation; (3) appointing JND Legal Administration ("JND") as Claims Administrator; (4) approving the proposed form and manner of disseminating notice to the Settlement Class; (5) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Class Counsel's application for attorneys' fees and expenses; and (6) setting a date for the final approval hearing.

The proposed $17.5 million Settlement is not only fair, reasonable, and adequate, but is also an excellent result.  This recovery represents approximately 3.9% the amount of estimated damages–well above settlements for similar securities class actions.  *See Securities Class Action Settlements—2022 Review and Analysis* (Cornerstone Research 2023), at 6, available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (finding a median settlement recovery of 3.6% overall in securities class actions in 2022).  For this reason, and others, the Settlement is substantively fair.

The Settlement was reached after two years of litigation, including (1) an extensive investigation conducted by Class Counsel; (2) the preparation of detailed pleadings; (3) months of

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

discovery, including review and analysis of thousands of documents; (4) extensive consultations with experts to evaluate potential damages; (5) the preparation and exchange of formal mediation statements and exhibits; and (6) arm's-length settlement negotiations, including a formal mediation session conducted by David M. Murphy, an experienced mediator at Phillips ADR Enterprises, P.C.

While Plaintiffs believe the merits of the case are strong, the proposed Settlement is an excellent result and is in the best interests of the Class in light of the risks and costs of litigating this action through trial and post-trial proceedings. Accordingly, Plaintiffs request preliminary approval so that notice of the proposed Settlement may be disseminated to the Class.

## II.    FACTUAL BACKGROUND

This is a federal securities class action against Citrix Systems, Inc. ("Citrix" or the "Company"), Robert M. Calderoni, Nanci E. Caldwell, Murray J. Demo, Thomas E. Hogan, Moira A. Kilcoyne, Robert E. Knowling, Jr., Peter J. Sacripanti, and J. Donald Sherman (the "Individual Defendants" and collectively, with Citrix, "Defendants,"). Citrix sells digital workspace solutions that provide an organization's employees with unified, reliable and secure access to all of their work resources (applications, content, etc.) across all of the organization's computing devices and locations. (¶49). Plaintiffs allege that Defendants misled investors by knowingly withholding a material omission—leaving out what Plaintiffs allege was the most important metric for evaluating the Company—from their Proxy, causing the Company to be undervalued. (¶¶ 173-75).

As set forth in the Complaint, in early 2021, Citrix began transitioning its business model from perpetual software licenses to cloud-based software subscriptions (a model known as "Software-as-a-Service," or "SaaS"). (¶¶3-5, 49). The Complaint alleges that as Citrix transitioned customers to the cloud, SaaS Annual Recurring Revenue—a/k/a SaaS ARR—began

accelerating and became the most important metric to measure Citrix's performance and prospects. (¶5).  In November 2021, in his Q3 2021 letter to Citrix shareholders, Defendant Calderoni— serving as both CEO and Chairman of the Board—stated that "our SaaS offerings are resonating with customers" with SaaS ARR exceeding $1 billion in Q3 2021, representing growth of 75% year-over-year ("YOY").  (¶85).  The Complaint alleges that the Board should have negotiated the sale of Citrix based on a valuation that recognized Citrix's accelerating SaaS ARR, for example, by valuing Citrix as a multiple of its SaaS ARR.  The Complaint alleges that using this valuation methodology for SaaS businesses, Citrix was undervalued.

The Complaint alleges that the proxy distributed to Citrix shareholders in March 2022 to approve the sale to Elliott and Vista presented a misleading narrative concerning Citrix's future prospects that omitted any reference to accelerating SaaS ARR.  (¶97).  A supplemental disclosure filed by Citrix with the SEC on April 13, 2022 disclosed accelerating SaaS ARR in Q1 2021, but did not disclose SaaS ARR in Q2 and Q3 2021, thereby allegedly perpetuating the narrative in the proxy that Citrix's growth was stalling.  (¶¶65, 85, 140).

On April 21, 2022, based on the allegedly false and misleading proxy, shareholders approved the sale of Citrix for $104.00 per share in cash.  The sale closed on September 30, 2022. (¶130).  The Complaint alleges that shareholders were damaged because they received less per share than they should have received.

## III.   PROCEDURAL HISTORY

On December 12, 2022, the original complaint in the Action was filed in the U.S. District Court for the Southern District of Florida.  ECF No. 1.  On March 8, 2023, the Court appointed George Messiha and Juan A. Vargas as Co-Lead Plaintiffs; Pomerantz LLP and Wohl & Fruchter LLP as Co-Lead Counsel; and Miller Shah LLP as Liaison Counsel. ECF No. 27.  On May 8, 2024,

Plaintiffs filed a Class Action Amended Complaint, ECF No. 34, alleging that the proxy violated Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder.

On July 12, 2023, Defendants moved to dismiss the Amended Complaint. ECF No. 42. On February 3, 2024, the Court granted in part and denied in part the motion to dismiss. ECF No. 50. On February 21, 2024, Defendants filed their answer to the Amended Complaint. ECF No. 57.

Discovery commenced, and the parties exchanged document requests and interrogatories and began producing documents on a rolling basis.

On June 6, 2024, the Parties participated in a private mediation session with David M. Murphy, an experienced mediator at Phillips ADR Enterprises, P.C.  In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation, and damages, setting forth the strengths and weaknesses of their case.  The mediation was conducted live in person.  At the mediation, the Parties negotiated in good faith, but were unable to reach agreement on a resolution on that date.  The Parties subsequently filed a Joint Mediation Report, ECF No. 75, informing the Court of this, and noting discussions were continuing.  Subsequently, the Parties continued to have good faith discussions through the mediator, and were able to reach an agreement in principle to settle and release all claims asserted against Defendants in the Action in exchange for a payment of $17,500,000.00 for the benefit of the Class, subject to the execution of a settlement stipulation and related papers and Court approval.

The agreement was memorialized in a memorandum of understanding (the "Memorandum of Understanding") dated as of June 25, 2024.  The Memorandum of Understanding sets forth, among other things, the Parties' agreement to fully and finally settle and release all claims that

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

were asserted or could have been asserted in the Action in return for a payment by or on behalf of Defendants of seventeen million five hundred thousand dollars and zero cents ($17,500,000.00) for the benefit of the Class.  The Memorandum of Understanding was formalized in the Stipulation that was executed on July 15, 2024.

On June 20, 2024, the Parties informed the Court via telephone notification that they had reached an agreement resolving the matter in principle.  In light of this, the Court entered an order administratively closing the case and requiring a motion for preliminary approval of class settlement to be filed on or before July 15, 2024.  ECF No. 76.

## IV.    THE SETTLEMENT

Under the terms of the Settlement, Defendants will cause $17.5 million (the "Settlement Amount") to be paid into an escrow account maintained by Huntington National Bank.  Class Counsel believes that this immediate cash recovery provides a substantial benefit to the Class.  The proposed Notice of Proposed Class Action Settlement (the "Notice") informs Class Members of the Settlement terms and affords an opportunity to request exclusion from the Class or to object to the Settlement, Plan of Allocation, and/or request for attorneys' fees and expenses.  The Notice will be mailed to the address of each Class Member (as identified in Citrix's transfer records), as well as to institutional investors and banks and brokerage firms that usually maintain custodial accounts.  The Summary Notice of Proposed Class Action Settlement (the "Summary Notice") will be published on a national business newswire.  A copy of the Notice, Summary Notice, Claim Form and Release Form ("Claim Form"), and Stipulation will also be posted on a website maintained by the Settlement Administrator.

## V.    SETTLEMENT WARRANTS PRELIMINARY APPROVAL

At the Settlement Hearing, the Court will have before it extensive papers submitted in support of approval of the proposed Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the litigation of this Litigation.   At this juncture, however, Plaintiffs request only preliminary approval of the Settlement.

### A.  Standards for Preliminary Approval

Rule 23(e) requires court approval for any settlement of a class action, and courts within this Circuit recognize that public policy strongly favors the pretrial settlement of class action lawsuits. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).   In determining a settlement's fairness, the Court's judgment is informed by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).   "Judicial review of a proposed class action settlement is a two-step process:  preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).   "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Id.*  "If the court grants preliminary approval, the second step of the process begins:  notice is given to the class members of a final fairness hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Exum v. Nat'l Tire & Battery*, 2020 WL 1670997, at *2 (S.D. Fla. Apr. 6, 2020).

Rule 23(e)(1), as amended in 2018, provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  With respect to Rule 23(e)(2)—which governs final approval—courts consider the following factors in determining

whether a proposed settlement is fair, reasonable, and adequate: (A) whether the class representatives and class counsel adequately represented the class; (B) whether the proposal negotiated at arm's length; (C) whether the relief provided for the class adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) whether the proposal treats class members equitably relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (i.e., "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 919.

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at 918. For this reason, the traditional factors that are utilized by courts in the Eleventh Circuit to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant. They are:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

substance and amount of opposition to the settlement;[1] and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.[2]

In sum, "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments, 324 F.R.D. at 918.  Plaintiffs respectfully request that the Court take the first step in the process and grant preliminary approval to the Settlement.

**B.  Plaintiffs and Lead Counsel Adequately Represented the Settlement Class**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  Here, there can be no dispute that Plaintiffs and Lead Counsel adequately represented the Settlement Class.

Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class, and they have no antagonistic interests.  Indeed, Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with that of the other Settlement Class Members.  *See Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019) (finding adequacy where "[p]laintiffs' interests in establishing Defendants' liability and maximizing the recovery are aligned with the interests of absent Class members").  Plaintiffs have also contributed significantly to the Action by overseeing the litigation, communicating with counsel, reviewing pleadings, producing documents to Lead Counsel with respect to their transactions in Citrix securities,

---

[1] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.
[2] *See also In re Health Ins. Innovations Sec. Litig.*, 2020 WL 10486665, at *3, 11 (M.D. Fla. Oct. 21, 2020) ("In the Eleventh Circuit, the [*Bennett*] factors are also considered in determining whether to approve a settlement"), *report and recommendation adopted*, 2020 WL 10486666 (M.D. Fla. Nov. 19, 2020).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

responding to interrogatories and requests for production of deocuments, and participating in settlement discussions.

In addition, Plaintiffs retained counsel who are highly experienced in securities litigation (*see* ECF Nos. 19-8, 19-9 (Co-Lead Counsel's firm resumes)) and who have vigorously prosecuted Plaintiffs' claims.  As set forth in detail above, Lead Counsel, among other things: (i) conducted an extensive legal and factual investigation of Defendants and their alleged violations of the securities laws; (ii) researched case law concerning the elements of the claims asserted; (iii) reviewed documents produced by Defendants; (iv) drafted the comprehensive and factually detailed Complaint; (v) in large part successfully opposed Defendants' motions to dismiss; (vi) consulted with experts; (vii) drafted a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected mediator; (viii) prepared the initial draft of the Stipulation and supporting documents; and (ix) worked with Plaintiffs' damages experts to craft the Plan of Allocation. Consequently, this factor supports preliminary approval.

### C.  The Proposed Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length."  "The Court must consider whether there is any evidence the settlement was the product of collusion, by examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001).  "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014).  "Moreover, the assistance of an experienced mediator

in the settlement process confirms that the settlement is non-collusive." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016).

As noted above, the proposed Settlement was achieved only after an all-day mediation session overseen by Mr. Murphy, and subsequent negotiating through the mediator post-mediation. As part of those discussions, the Parties prepared submissions concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis. The negotiations focused on heavily disputed issues, which were explored in-depth. Thus, "[t]here is no evidence that fraud or collusion affected the settlement in any respect." *Public Storage*, 301 F. Supp. 3d at 1248. Accordingly, this factor weighs in favor of preliminary approval. *See In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is noncollusive"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

### D.  The Relief Provided for The Settlement Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).

### 1. The Settlement Amount is Within the Range of Reasonableness

The $17,500,000 Settlement Amount is well within the range of reasonableness to warrant preliminary approval.[3]  Here, Plaintiffs estimate that if they had *fully prevailed* at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—i.e., Plaintiffs' *best case scenario*—the total *maximum* damages would be approximately $453 million.   Thus, the $17,500,000 Settlement Amount represents approximately 3.8% of the total *maximum* damages *potentially* available.   Conversely, if Defendants' arguments were accepted by the trier of fact, the maximum recoverable damages could have been drastically reduced or eliminated.   A recovery of 3.8% is above the average recovery in similar situations.   *See Securities Class Action Settlements— 2022 Review and Analysis* (Cornerstone Research 2023), at 6, available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (finding a median settlement recovery of 3.6% overall in securities class actions in 2022); *IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years"); *see also In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 (M.D. Fla. Mar. 23, 2021) ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").

---

[3] Similarly, the second and third *Bennett* factors ask courts to consider the range of possible recovery and the point on or below the range of possible recovery at which settlement is fair, reasonable, and adequate. *Bennett*, 737 F.2d at 986. These factors are "easily combined." *Chase Bank*, 297 F.R.D. at 693.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Thus, there can be no doubt that the Settlement Amount is well within the range of reasonableness, weighing in favor of preliminary approval.

### 2.   The Costs, Risks, and Delay of Trial and Appeal

In evaluating a settlement under Rule 23(e)(2)(C), courts also consider "the costs, risks, and delay of trial and appeal."[4]  The Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011) (court need not determine if settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial.").

Here, there is no question that continued litigation would have been costly, risky, and protracted.  Courts have repeatedly noted that "[s]tockholder litigation is notably difficult and notoriously uncertain." *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008).  Indeed, Plaintiffs would have to obtain class certification, and *prove* their claims.  Overcoming these hurdles would be no small task, and Plaintiffs and Lead Counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiffs' claims through class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals.

---

[4] Similarly, the first and fourth *Bennett* factors look at "the likelihood of success at trial," and "the complexity, expense and duration of litigation," respectively. *Bennett*, 737 F.2d at 986; *see also In re: Checking Account Overdraft Litig.*, 2013 WL 11319392, at *8 (S.D. Fla. Aug. 5, 2013) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see infra*), the class has not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree, or that the class period could be shortened based on decisions related to falsity, negligence and/or loss causation. Had Plaintiffs failed to obtain class certification, or the proposed class period was truncated, the benefit to the Settlement Class would have been substantially reduced or eliminated. Moreover, assuming class certification was achieved, the Court could revisit certification at any time—presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement"). Moreover, there was a substantial risk that Plaintiffs would be unable to prove their claims at trial. Furthermore, Defendants made various loss causation arguments during mediation, which if accepted by a jury, would have severely reduced, if not eliminated, the amount of potentially recoverable damages.

Had the Action continued, Defendants would have no doubt argued at summary judgment and trial that the *evidence* demonstrated that their public statements did not contain any material misstatements or omissions, that Plaintiffs could not have proven loss causation, and that Plaintiffs and the Settlement Class suffered no damages. Plaintiffs would have to prevail on all of these issues at trial, as well as the inevitable appeals that would follow, before they recovered anything. And, of course, the ultimate outcome—many years in the future—would remain uncertain. *See*,

*e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs).[5]

Finally, given, among other things, the extensive discovery necessary to prove the case, and the significant expert testimony that would have been needed to establish liability, loss causation and damages, there is no doubt that continued prosecution of the Action would have been both time intensive and costly. *See In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *11 (E.D. La. Mar. 2, 2009) (noting continued litigation, including through discovery, class certification, trial and appeals, "would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement").

In sum, even if Plaintiffs prevailed after trial and appeals, there is no guarantee that they would have obtained a judgment greater than the $17.5 million Settlement. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery— or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

### 3.    Other Factors Established by Rule 23 Support Preliminary Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of

---

[5] *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports the Settlement's approval or is neutral.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Here, JND—the Claims Administrator selected by Lead Counsel subject to Court approval—will process claims under the guidance of Lead Counsel, provide claimants with an opportunity to cure any deficiency in their claim or request review of any denial of their claim, and, ultimately, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, after submission and Court-approval of Plaintiffs' distribution motion. This type of claims processing is standard in securities class action settlements and is effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[6] *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement with similar distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

Second, as disclosed in the Notice, Lead Counsel will apply for a percentage of the common fund for attorneys' fees in an amount not to exceed 33.3% to compensate counsel for their services rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33.3% of the Settlement Fund plus interest is reasonable in light of the work performed and the results obtained. *See*, *e.g.*, *Reyes v. AT&T Mobility Servs.*, *LLC*, 2013 WL 12219252, at *3 (S.D. Fla.

---

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Ex. 1 (Stipulation ¶11).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit."); *In re: Managed Care Litig. v. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of $100 million settlement); *In re: Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33⅓% of settlement of over $30 million).[7]

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the Company's common stock, request exclusion (or "opt out") from the Settlement.  This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of class action settlement and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### E.  All Settlement Class Members are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Fed. R. Civ. P. 23(e)(2)(D); *see also In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (standard for approval of a plan of allocation

---

[7] *See also* Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (Oct. 2017) (finding that, over a four year period, the mean fee award in the Eleventh Circuit was 30% and the median award was 33%); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35% of $25 million and stating, "[c]ourts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund") (citing cases).

is the same as approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties."). The Settlement does not provide preferential treatment to the Plaintiffs or any other segment of the Settlement Class.[8]

Here, the proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Lead Counsel, is set forth in the Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. A-1 to Exhibit 1 (the Stipulation) at 47-51. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Claim amount for each Settlement Class Member's Settlement Class Period transactions. *Id.*

The calculation of each Settlement Class Member's Recognized Claim under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when Citrix securities were purchased and sold, the number of shares each Authorized Claimant held through the closing of the Merger, and the total number of valid Claim Forms submitted. The Plan of Allocation reflects Plaintiffs' allegations that the alleged false and misleading statements in the Merger Proxy misled investors to consummate the Merger at an unfair price per share that did not adequately value Citrix, and caused economic harm to shareholders who were misled into approving the sale of their shares to Elliott and Citrix at an unfair and inadequate price. Accordingly, because all shares of Citrix common stock that were held through the closing of the Merger suffered the same per-share economic loss as a result of the alleged misstatements in the Proxy, it is fair and equitable to distribute the Settlement based on the number of shares each Authorized Claimant held through the closing of the Merger. Under the Plan of Allocation, after

---

[8] Pursuant to the PSLRA, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. §§ 78u-4(a)(4), 77z-1(a)(4).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

at least six (6) months from the initial distribution, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and Litigation Expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion, contributing any remains to the Dade Legal Aid Foundation Inc., or such other private, non-profit, non-sectarian 501(c)(3) organization designated by Plaintiffs and approved by the Court.  The Net Settlement Fund will be allocated to Authorized Claimants—including Plaintiffs—on a *pro rata* basis based on the relative size of their Recognized Claims.  Similar plans have repeatedly been approved by courts in class action securities settlements.  *See*, *e.g.*, *In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007) ("Although the plan of allocation benefits some members of the class differently, it was developed to fairly account for the relative strength of individual claims and the timing of the relevant securities purchases."); *Pritchard v. APYX Med. Corp.*, 2020 WL 6940765, at *1-2 (M.D. Fla. Nov. 6, 2020); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

### F.  The Remaining Eleventh Circuit Factors Strongly Support Preliminary Approval

#### 1.  The Stage of Proceedings at Which Settlement was Achieved

Courts also consider "the stage of proceedings at which settlement was achieved." *Bennett*, 737 F.2d at 986.  In weighing this *Bennett* factor, a Court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery was conducted.  *Francisco v. Numismatic Guar. Corp.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008).  "[F]ormal discovery [is not] a necessary ticket to the bargaining table" (*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)), and courts have rejected the notion that such discovery

must take place.[9]  *See, e.g.*, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of securities class action settlement where there had been no "formal discovery" but "class counsel had conducted informal discovery by hiring private investigators and experts").

As discussed in detail above, Plaintiffs and their counsel obtained a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement.  Consequently, "[Plaintiffs'] Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation."  *Numismatic Guaranty Corp.*, 2008 WL 649124, at *11.

### 2. Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *accord Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007).  Here, this Settlement was achieved through an experienced mediator, and Plaintiffs' Counsel "are capable attorneys with experience in litigation of this nature," and "there is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement."  *Id.* Accordingly, this factor favors preliminary approval.  *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988) (giving "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.").

---

[9] In *In Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Class actions may be certified for the purpose of settlement as long as the class meets the certification requirements under Rule 23.  Such is the case here.[10]

First, numerosity is satisfied under Rule 23(a)(1) because Lead Plaintiffs assert claims on behalf of class members arising from more than 125 million shares of Citrix common stock outstanding and eligible to vote on the Merger,[11] and the class is therefore "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(l); *In re Pattern Energy Grp. Inc. Sec. Litig.*, C.A. No. 20-275-MN-JLH, 2023 WL 1931201, at *2 (D. Del. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 2655537 (D. Del. Mar. 27, 2023); *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *6 (S.D. Fla. Mar. 16, 2016) (numerosity satisfied where 3.13 million shares were traded on a weekly basis); *In re Cigna Corp. Sec. Litig.*, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) (courts have "recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security.").

Second, commonality is satisfied under Rule 23(a)(2) because the Action raises numerous common questions of law and fact. The claims involve "questions of law or fact common to the class" because class members' injuries arise from the same facts regarding the sale and materially misleading Proxy, and the elements of Section 14(a) claims—material misrepresentation/omission and causation—are routinely found to satisfy commonality.  Fed. R. Civ. P. 23(a)(2); *see generally Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (falsity, materiality, and

---

[10] Defendants do not object to certification of the Settlement Class for settlement purposes only. Defendants have reserved all of their rights to challenge certification if the Settlement does not become Final.

[11] While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, the Proxy discloses that, as of the close of business on March 8, 2022, there were 125,913,152 shares of Citrix common stock outstanding and eligible to vote on the Merger. (¶178).

loss causation all common to a class); *see also Pattern Energy*, 2023 WL 1931201 at *2; *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 618 (M.D. Fla 2006) (commonality satisfied where "a plaintiff alleges that there is a common scheme of deceptive conduct to defraud investors").

Third, typicality is satisfied under Rule 23(a)(3) because Lead Plaintiffs claims are likewise "typical of the claims . . . of the class" because Lead Plaintiffs claims, like those of all other class members, arise from the same course of events—*i.e.*, the sale pursuant to Defendants' materially misleading proxy filings—and the same legal theories under Section 14(a). Fed. R. Civ. P. 23(a)(3); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) ("the typicality requirement may be satisfied despite substantial factual differences … when there is a strong similarity of legal theories.").

Fourth, as set forth above, adequacy is satisfied under Rule 23(a)(4) because "[p]laintiffs' interest in establishing Defendants' liability and maximizing the recovery are aligned with the interests of the absent Class members." *Monroe*, 332 F.R.D. at 379.  As Citrix shareholders whose shares were affected in the sale, Lead Plaintiffs have the same interests as the other class members, and having retained qualified, experienced, and capable counsel, and exhibiting no interests that conflict with those of the class, will therefore "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see Pattern Energy*, 2023 WL 1931201 at *2; *see also In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 696 (N.D. Ga. 2002) ("The standard involves inquiry into questions of whether Plaintiffs' counsel are qualified, experienced and generally able to conduct the litigation.").  Thus, Plaintiffs have demonstrated that they and their counsel will fairly and adequately protect the Settlement Class.

The Fed. R. Civ. P. 23(b)(3) requirements of predominance and superiority are likewise satisfied.  The common factual and legal issues in this case, which pertain to the harm caused to

class members by the sale and materially misleading Proxy, by far "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Indeed, there is virtually no individualized inquiry necessary to this litigation—reliance is not an element of a Section 14(a) claim, and questions of individual reliance on Defendants' alleged material misrepresentations are thus not at issue in this case. *See Erickson*, 2023 WL 5966785; *Pattern Energy*, 2023 WL 1931201. Moreover, common questions of law or fact, including whether Defendants violated Section 14(a) "by making material misrepresentations of omissions, and whether the class members sustained damages as calculated through a uniform methodology, among others, predominate over any individual questions." *Pattern Energy*, 2023 WL 1931201 at *2. A class action is also "superior to other available methods for fairly and efficiently adjudicating" class members' claims because multiple smaller lawsuits asserting the same claims on behalf of geographically dispersed plaintiffs would be costly and inefficient, and would unfairly exclude from recovery those class members who cannot afford—or whose claims are not large enough to justify—the cost of separate litigation. Fed. R. Civ. P. 23(b)(3); *id.*

Finally, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[I]ndividual class members have little interest in controlling the prosecution because the cost of bringing individual suits to seek recovery would in most cases outweigh the recovery obtained"; "this forum is as desirable a forum as any given the geographic dispersal of investors"; and given that a settlement has been reached, "this putative class action presents no likely management difficulties." *See Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 451-52 (W.D. Tex. 2019); *see also In re HealthSouth Corp. Sec. Litig*, 257 F.R.D. 260, 284 (N.D. Ala. 2009) ("As a general rule, class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases.").

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Class certification for the purposes of settlement is, therefore, appropriate.

## VII.   THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

The Parties have negotiated the form of a Notice of Proposed Class Action Settlement (the "Notice") to be disseminated to the Class to notify them of the terms of the Settlement and of their rights in connection therewith, as well as a Summary Notice of Proposed Class Action Settlement (the "Summary Notice") to be published on a national business newswire.   The Notice and Summary Notice have been drafted to comply with the provisions of the Private Securities Litigation Reform Act.  *See* 15 U.S.C. § 78u-4(a)(7).  The Notice provides detailed information concerning (a) the proposed Settlement; (b) the nature, history, and progress of the Action; (c) the date of the Final Approval Hearing; (d) the proposed Plan of Allocation; (e) the fees and expenses to be sought by Class Counsel; (f) the rights of Class Members, including the procedures for filing a Claim Form, requesting exclusion from the Class, or objecting to the Settlement or Plan of Allocation or request for fees and expenses; and (g) how to contact Class Counsel, access the Court's docket, or otherwise learn more about the Action and Settlement.

Under the proposed Preliminary Approval Order, the Settlement Administrator will (1) mail the Notice and Claim Form to all holders of Citrix common stock during the Class Period, (2) post the Notice and Claim Form to the Settlement Administrator's website, and (3) cause the Summary Notice to be published over *GlobeNewswire*.  The Settlement Administrator will also make additional copies of the Notice available to nominee holders such as brokerage firms who held Company stock.  Such nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide the Settlement Administrator with their names and addresses so the Settlement Administrator can mail them the Notice directly.

Plaintiffs believe that providing long-form notice by mail, along with publishing summary notice by a major business newswire service and posting the Notice and Claim Form on the

Settlement Administrator's website, is the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies the requirements of Rule 23 and due process.  *See, e.g. In re Health Ins. Innovations Sec. Litig.*, 2020 WL 10486666, at *3 (finding notice method adequate where the (i) notice and proof of claim is mailed by first class mail to settlement class members; (ii) summary notice is published once in Investor's Business Daily and transmitted once over the PR Newswire; and (iii) notice, summary notice, and claim form is posted on claim administrator's website).  Accordingly, the Court should find that the Notice, Summary Notice, and the procedures for dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

## VIII.    THE PROPOSED SCHEDULE

Plaintiffs propose the following procedural schedule.  The schedule is similar to those used in similar class action settlements and provides due process for potential Class Members with respect to their rights concerning the Settlement.

| | |
|---|---|
| Deadline for mailing Notice, publication of Summary Notice, and posting of Notice and Stipulation on Settlement website ("Notice Date") | Twenty (20) calendar days after entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of final Settlement approval and Fee and Expense Award | Thirty-four (34) calendar days before the Settlement Hearing |
| Objection Deadline | Seventeen (17) calendar days before the Settlement Hearing |
| Opt-Out Deadline | Ten (10) calendar days before the Settlement Hearing |
| Deadline for Plaintiffs to file reply papers in support of Settlement and Fee and Expense Award and in response to any objections | Seven (7) calendar days before the Settlement Hearing |

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

| Deadline to submit Proofs of Claim | Five (5) calendar days before the Settlement Hearing |
| --- | --- |
| Settlement Hearing | _____, 2024 |

**IX.  CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and enter a Preliminary Approval Order substantially in the form filed herewith.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Dated:  July 15, 2024

Respectfully submitted,

**POMERANTZ LLP**

_/s/ Austin P. Van_
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

**WOHL & FRUCHTER LLP**

Joshua E. Fruchter
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

_Co-Lead Counsel for the Proposed Class_

**MILLER SHAH LLP**

Nathan C. Zipperian
Jayne A. Goldstein
2103 N. Commerce Pkwy.
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
nczipperian@millershah.com
jagoldstein@millershah.com

_Liaison Counsel for the Proposed Class_

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT