**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-62327-RAR**

**JUAN A. VARGAS**, *individually and*
*on behalf of all others similarly situated,*

      Plaintiffs,

v.

**CITRIX SYSTEMS, INC.**, *et al.*,

      Defendants.

_____/

## ORDER PRELIMINARILY APPROVING
## SETTLEMENT AND PROVIDING FOR NOTICE

    **THIS CAUSE** comes before the Court on the parties' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"), [ECF No. 79]. The parties request that the Court consider whether the Settlement reached by the parties should be preliminarily approved, the proposed Settlement Class preliminarily certified, and the proposed plan for notifying the Settlement Class approved. *See generally*, Mot. Having carefully reviewed the proposal, all relevant filings, and the record, the Court finds that the proposed Settlement satisfies the criteria for preliminary approval, the proposed Settlement Class should be preliminarily certified, and the proposed notice plan approved. Accordingly, it is hereby

    **ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

## BACKGROUND

    This is a federal securities class action against Citrix Systems, Inc. ("Citrix" or the "Company"), Robert M. Calderoni, Nanci E. Caldwell, Murray J. Demo, Thomas E. Hogan, Moira A. Kilcoyne, Robert E. Knowling, Jr., Peter J. Sacripanti, and J. Donald Sherman (the "Individual Defendants" and collectively, with Citrix, "Defendants,"). Citrix sells digital workspace solutions

that provide an organization's employees with unified, reliable, and secure access to all of their work resources (applications, content, etc.) across all of the organization's computing devices and locations. Compl. ¶ 49. Plaintiffs allege that Defendants misled investors by knowingly withholding a material omission—leaving out what Plaintiffs allege was the most important metric for evaluating the Company—from their proxy, causing the Company to be undervalued.  Compl. ¶¶ 173–75. As set forth in the Complaint, in early 2021, Citrix began transitioning its business model from perpetual software licenses to cloud-based software subscriptions (a model known as "Software-as-a-Service," or "SaaS").  Compl. ¶¶ 3–5, 49. The Complaint alleges that as Citrix transitioned customers to the cloud, SaaS Annual Recurring Revenue—a/k/a SaaS ARR—began accelerating and became the most important metric to measure Citrix's performance and prospects. Compl. ¶ 5.

In November 2021, in his Q3 2021 letter to Citrix shareholders, Defendant Calderoni—serving as both CEO and Chairman of the Board—stated that "our SaaS offerings are resonating with customers" with SaaS ARR exceeding $1 billion in Q3 2021, representing growth of 75% year-over-year ("YOY"). Compl. ¶ 85. The Complaint alleges that the Board should have negotiated the sale of Citrix based on a valuation that recognized Citrix's accelerating SaaS ARR, for example, by valuing Citrix as a multiple of its SaaS ARR.  The Complaint further alleges that using this valuation methodology for SaaS businesses, Citrix was undervalued.  And the proxy distributed to Citrix shareholders in March 2022 to approve the sale to Elliott and Vista purportedly presented a misleading narrative concerning Citrix's future prospects that omitted any reference to accelerating SaaS ARR.  Compl. ¶ 97.  A supplemental disclosure filed by Citrix with U.S. Securities and Exchange Commission ("SEC") on April 13, 2022 disclosed accelerating SaaS ARR in Q1 2021, but did not disclose SaaS ARR in Q2 and Q3 2021, thereby allegedly perpetuating the narrative in the proxy that Citrix's growth was stalling.  Compl. ¶¶ 65, 85, 140.  On April 21, 2022,

based on the allegedly false and misleading proxy, shareholders approved the sale of Citrix for $104.00 per share in cash. The sale closed on September 30, 2022. Compl. ¶ 130. The Complaint alleges that shareholders were damaged because they received less per share than they should have received.

On December 12, 2022, the original complaint was filed in this Court. [ECF No. 1]. On March 8, 2023, the Court appointed George Messiha and Juan A. Vargas as Co-Lead Plaintiffs; Pomerantz LLP and Wohl & Fruchter LLP as Co-Lead Counsel; and Miller Shah LLP as Liaison Counsel. [ECF No. 27]. On May 8, 2024, Plaintiffs filed a Class Action Amended Complaint, [ECF No. 34], alleging that the proxy violated Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 14a-9 promulgated thereunder. On July 12, 2023, Defendants moved to dismiss the Amended Complaint. [ECF No. 42]. On February 3, 2024, the Court granted in part and denied in part the motion to dismiss. [ECF No. 50]. On February 21, 2024, Defendants filed their answer to the Amended Complaint. [ECF No. 57]. Discovery commenced, and the parties exchanged document requests and interrogatories and began producing documents on a rolling basis.

On June 6, 2024, the parties participated in a private mediation session with David M. Murphy, an experienced mediator at Phillips ADR Enterprises, P.C. In advance of the mediation, the parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation, and damages, setting forth the strengths and weaknesses of their case. The mediation was conducted live in person. At the mediation, the parties negotiated in good faith, but were unable to reach agreement on a resolution on that date. The parties subsequently filed a Joint Mediation Report, [ECF No. 75], informing the Court of this, and noting discussions were continuing. Subsequently, the parties continued to have good faith discussions through the mediator, and were able to reach an agreement in principle

to settle and release all claims asserted against Defendants in this action in exchange for a payment of $17,500,000.00 for the benefit of the Class, subject to the execution of a settlement stipulation and related papers and Court approval.  The agreement was memorialized in a memorandum of understanding ("Memorandum of Understanding") dated as of June 25, 2024.

The Memorandum of Understanding sets forth, among other things, the parties' agreement to fully and finally settle and release all claims that were asserted or could have been asserted in this action in return for a payment by or on behalf of Defendants of seventeen million five hundred thousand dollars and zero cents ($17,500,000.00) for the benefit of the Class.  The Memorandum of Understanding was formalized in the Stipulation that was executed on July 15, 2024.  On June 20, 2024, the parties informed the Court via telephone notification that they had reached an agreement resolving the matter in principle.  In light of this, the Court entered an order administratively closing the case and requiring a motion for preliminary approval of class settlement to be filed on or before July 15, 2024.  [ECF No. 76].

## LEGAL STANDARD

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue."  *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up).  "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation."  *Id.*  In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial.  *Id.* at 671–72; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of

a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* FED. R. CIV. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The Eleventh Circuit also requires that the class representatives have standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see also Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). To do so, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.* Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). These additional factors are:

> there was no fraud or collusion in arriving at the settlement and . . . the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible

> recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 ("*Bennett* factors"). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (cleaned up).

<u>ANALYSIS</u>

The Court finds, for settlement purposes only and conditioned on final certification of the proposed class and on the entry of a Final Approval Order, that the Settlement Class satisfies the requirements of Rule 23(a), 23(b)(3), and 23(e), as well as the *Bennett* factors. The Court will address the pertinent factors in turn.

### A.    The Settlement Class Meets the Certification Requirements under Rule 23

First, numerosity is satisfied under Rule 23(a)(1) because Lead Plaintiffs assert claims on behalf of class members arising from more than 125 million shares of Citrix common stock outstanding and eligible to vote on the Merger, and the class is therefore "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(l); *In re Pattern Energy Grp. Inc. Sec. Litig.*, C.A. No. 20-275-MN-JLH, 2023 WL 1931201, at *2 (D. Del. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 2655537 (D. Del. Mar. 27, 2023); *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 14-20880, 2016 WL 4006661, at *6 (S.D. Fla. Mar. 16, 2016) (numerosity satisfied where 3.13 million shares were traded on a weekly basis); *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) (noting courts have "recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security.").

Second, commonality is satisfied under Rule 23(a)(2) because this action raises numerous common questions of law and fact.  The claims involve "questions of law or fact common to the class" because class members' injuries arise from the same facts regarding the sale and materially misleading proxy, and the elements of Section 14(a) claims—material misrepresentation/omission and causation—are routinely found to satisfy commonality.  FED. R. CIV. P. 23(a)(2); *see generally Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (noting falsity, materiality, and loss causation all common to a class); *see also Pattern Energy*, 2023 WL 1931201, at *2; *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 618 (M.D. Fla 2006) (finding commonality satisfied where "a plaintiff alleges that there is a common scheme of deceptive conduct to defraud investors").

Third, typicality is satisfied under Rule 23(a)(3) because Lead Plaintiffs' claims are likewise "typical of the claims . . . of the class" because Lead Plaintiffs claims, like those of all other class members, arise from the same course of events—i.e., the sale pursuant to Defendants' materially misleading proxy filings—and the same legal theories under Section 14(a).  FED. R. CIV. P. 23(a)(3); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) ("[T]he typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories.").

Fourth, as set forth above, adequacy is satisfied under Rule 23(a)(4) because "[p]laintiffs' interest in establishing Defendants' liability and maximizing the recovery are aligned with the interests of the absent Class members."  *See Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019).  As Citrix shareholders whose shares were affected in the sale, Lead Plaintiffs have the same interests as the other class members, and having retained qualified, experienced, and capable counsel, and exhibiting no interests that conflict with those of the class, will therefore "fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4);

*see Pattern Energy*, 2023 WL 1931201, at *2; *see also In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 696 (N.D. Ga. 2002) ("The standard involves inquiry into questions of whether Plaintiffs' counsel are qualified, experienced and generally able to conduct the litigation."). Thus, Plaintiffs have demonstrated that they and their counsel will fairly and adequately protect the Settlement Class.

The Rule 23(b)(3) requirements of predominance and superiority are likewise satisfied. The common factual and legal issues in this case, which pertain to the harm caused to class members by the sale and materially misleading proxy, by far "predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Indeed, there is virtually no individualized inquiry necessary to this litigation—reliance is not an element of a Section 14(a) claim, and questions of individual reliance on Defendants' alleged material misrepresentations are thus not at issue in this case. *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 130 (S.D.N.Y. 2023). Moreover, common questions of law or fact, including whether Defendants violated Section 14(a) "by making material misrepresentations of omissions, and whether the class members sustained damages as calculated through a uniform methodology, among others, predominate over any individual questions." *Pattern Energy*, 2023 WL 1931201, at *2. A class action is also "superior to other available methods for fairly and efficiently adjudicating" class members' claims because multiple smaller lawsuits asserting the same claims on behalf of geographically dispersed plaintiffs would be costly and inefficient, and would unfairly exclude from recovery those class members who cannot afford—or whose claims are not large enough to justify—the cost of separate litigation. FED. R. CIV. P. 23(b)(3). Finally, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "[I]ndividual class members have little interest in controlling the prosecution because the cost of bringing individual suits to seek recovery would in most cases outweigh the recovery

obtained"; "this forum is as desirable a forum as any given the geographic dispersal of investors"; and given that a settlement has been reached, "this putative class action presents no likely management difficulties." *See Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 451–52 (W.D. Tex. 2019); *see also In re HealthSouth Corp. Sec. Litig*, 257 F.R.D. 260, 284 (N.D. Ala. 2009) ("As a general rule, class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases.").

**B.     The Rule 23(e) Factors and the *Bennett* Factors are Satisfied**

**(1)     *Plaintiffs and Lead Counsel Adequately Represented the Settlement Class***

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  Here, there can be no dispute that Plaintiffs and Lead Counsel adequately represented the Settlement Class.  Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class, and they have no antagonistic interests. Indeed, Plaintiffs' interest in obtaining the largest possible recovery in this action is aligned with that of the other Settlement Class Members.  *Monroe*, 332 F.R.D. at 379 (finding adequacy where "[p]laintiffs' interests in establishing Defendants' liability and maximizing the recovery are aligned with the interests of absent Class members").  Plaintiffs have also contributed significantly to the action by overseeing the litigation, communicating with counsel, reviewing pleadings, producing documents to Lead Counsel with respect to their transactions in Citrix securities, responding to interrogatories and requests for production of documents, and participating in settlement discussions. In addition, Plaintiffs retained counsel who are highly experienced in securities litigation—*see* [ECF Nos. 19-8, 19-9] (Co-Lead Counsel's firm resumes)—and who have vigorously prosecuted Plaintiffs' claims.  As set forth in detail above, Lead Counsel, among other things: (i) conducted an extensive legal and factual investigation of Defendants and their alleged violations of the securities laws; (ii) researched case law concerning the elements of the

claims asserted; (iii) reviewed documents produced by Defendants; (iv) drafted the comprehensive and factually detailed Complaint; (v) in large part successfully opposed Defendants' motions to dismiss; (vi) consulted with experts; (vii) drafted a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected mediator; (viii) prepared the initial draft of the Stipulation and supporting documents; and (ix) worked with Plaintiffs' damages experts to craft the Plan of Allocation.  Consequently, this factor supports preliminary approval.

### (2)      The Settlement was Negotiated at Arm's Length

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length."  "The Court must consider whether there is any evidence the settlement was the product of collusion, by examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001).  "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014).  "Moreover, the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016). As noted above, the proposed Settlement was achieved only after an all-day mediation session overseen by Mr. Murphy, and subsequent negotiating through the mediator post-mediation.  As part of those discussions, the parties prepared submissions concerning, among other things, their respective views of the action's merits and damages on a class-wide basis.  The negotiations focused on heavily disputed issues, which were explored in-depth.  Thus, "[t]here is no evidence that fraud or collusion affected the settlement in any respect."  *Public Storage*, 301 F. Supp. 3d at 1248.  Accordingly, this factor weighs in favor of preliminary approval.  *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANx), 2014

WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is noncollusive"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661–62 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

### (3)      The Relief Provided for the Settlement Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).

### (a)      The Settlement Amount is Within the Range of Reasonableness

The $17,500,000 Settlement Amount is well within the range of reasonableness to warrant preliminary approval.[1]  Here, Plaintiffs estimate that if they had fully prevailed at both summary judgment and after a jury trial; if the Court certified the same class period as the Settlement Class Period; and if the Court and jury accepted Plaintiffs' damages theory—i.e., Plaintiffs' best case scenario—the total maximum damages would be approximately $453 million.  Thus, the $17,500,000 Settlement Amount represents approximately 3.8% of the total maximum damages potentially available.  Conversely, if Defendants' arguments were accepted by the trier of fact, the maximum recoverable damages could be drastically reduced or eliminated.  A recovery of 3.8% is above the average recovery in similar situations. *See IBEW v. Int'l Game Tech., Inc.*, No. 3:09-

---

[1] Similarly, the second and third *Bennett* factors ask courts to consider the range of possible recovery and the point on or below the range of possible recovery at which settlement is fair, reasonable, and adequate. *Bennett*, 737 F.2d at 986.  These factors are "easily combined." *Chase Bank*, 297 F.R.D. at 693.

CV-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years"); *see also In re Health Ins. Innovations Sec. Litig.*, No. 8:17-CV-2186-TBP-SPF, 2021 WL 1341881, at *8 (M.D. Fla. Mar. 23, 2021) (explaining "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").

### (b)    The Costs, Risks, and Delay of Trial and Appeal

In evaluating a settlement under Rule 23(e)(2)(C), courts also consider "the costs, risks, and delay of trial and appeal." The Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697–98 (M.D. Fla. 2005); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011) (noting the court need not determine if settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."). Here, continued litigation would have been costly, risky, and protracted. Courts have repeatedly noted that "[s]tockholder litigation is notably difficult and notoriously uncertain." *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008). Indeed, Plaintiffs would have to obtain class certification, and prove their claims. Plaintiffs and Lead Counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiffs' claims through class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals.

Even if Plaintiffs prevailed after trial and appeals, there is no guarantee that they would have obtained a judgment greater than the $17.5 million Settlement. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed

no recovery at all—several years in the future.  *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multidistrict securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.").  By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

*(c)       Other Factors Supporting Preliminary Approval*

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  FED. R. CIV. P. 23(e)(2)(C)(ii)–(iv).  Each of these factors supports the Settlement's approval or is neutral.  First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Here, JND—the Claims Administrator selected by Lead Counsel subject to Court approval—will process claims under the guidance of Lead Counsel, provide claimants with an opportunity to cure any deficiency in their claim or request review of any denial of their claim, and, ultimately, mail or wire Authorized Claimants their pro rata share of the Net Settlement Fund as calculated under the Plan of Allocation, after submission and Court-approval of Plaintiffs' distribution Motion.  This type of claims processing is standard in securities class action settlements and is effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226,

233–34, 242 (E.D. Mich. 2016) (approving settlement with similar distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

Second, as disclosed in the Notice, Lead Counsel will apply for a percentage of the common fund for attorneys' fees in an amount not to exceed 33.3% to compensate counsel for their services rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33.3% of the Settlement Fund plus interest is reasonable in light of the work performed and the results obtained. *See, e.g., Reyes v. AT&T Mobility Servs., LLC*, No. 10-20837, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit."); *In re: Managed Care Litig. v. Aetna*, No. 00-1334-MD, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of $100 million settlement); *In re: Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL (S.D. Fla. April 19, 2005) (awarding fees of 33⅓% of settlement of over $30 million).

Third, with respect to Rule 23(e)(2)(C)(iv), the parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the Company's common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of class action settlement and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### **(4)** **All Settlement Class Members are Treated Equitably**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  FED. R. CIV. P. 23(e)(2)(D); *see also In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (explaining standard for approval of a plan of allocation is the same as approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties.").  The Settlement does not provide preferential treatment to the Plaintiffs or any other segment of the Settlement Class.  Here, the proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Lead Counsel, is set forth in the Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms.  *See* Ex. A-1 to Exhibit 1 (the Stipulation) at 47–51.

Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Claim amount for each Settlement Class Member's Settlement Class Period transactions.  *Id.*  The calculation of each Settlement Class Member's Recognized Claim under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when Citrix securities were purchased and sold, the number of shares each Authorized Claimant held through the closing of the Merger, and the total number of valid Claim Forms submitted.  The Plan of Allocation reflects Plaintiffs' allegations that the alleged false and misleading statements in the Merger proxy misled investors to consummate the Merger at an unfair price per share that did not adequately value Citrix, and caused economic harm to shareholders who were misled into approving the sale of their shares to Elliott and Citrix at an unfair and inadequate price.

Accordingly, because all shares of Citrix common stock that were held through the closing of the Merger suffered the same per-share economic loss as a result of the alleged misstatements in the proxy, it is fair and equitable to distribute the Settlement based on the number of shares each

Authorized Claimant held through the closing of the Merger.  Under the Plan of Allocation, after at least six (6) months from the initial distribution, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and Litigation Expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion, contributing any remains to the Dade Legal Aid Foundation Inc., or such other private, non-profit, non-sectarian 501(c)(3) organization designated by Plaintiffs and approved by the Court.

The Net Settlement Fund will be allocated to Authorized Claimants—including Plaintiffs—on a pro rata basis based on the relative size of their Recognized Claims.  Similar plans have repeatedly been approved by courts in class action securities settlements.  *See, e.g., In re Catalina Mktg. Corp. Sec. Litig.*, No. 8:03-CV-1582-T-27TBM, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007) ("Although the plan of allocation benefits some members of the class differently, it was developed to fairly account for the relative strength of individual claims and the timing of the relevant securities purchases."); *Pritchard v. APYX Med. Corp.*, No. 8:19-CV-00919-SCB-AEP, 2020 WL 6940765, at *1–2 (M.D. Fla. Nov. 6, 2020); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

### (5) *The Remaining* **Bennett** *Factors Support Preliminary Approval*

### (a) *The Stage the Settlement was Achieved*

Courts also consider "the stage of proceedings at which settlement was achieved."  *Bennett*, 737 F.2d at 986.  In weighing this *Bennett* factor, a Court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery was conducted.  *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008).  "[F]ormal discovery [is not] a necessary ticket to the bargaining table", *In re Corrugated Container*

*Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981), and courts have rejected the notion that such discovery must take place. *See, e.g., Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of securities class action settlement where there had been no "formal discovery" but "class counsel had conducted informal discovery by hiring private investigators and experts"). As discussed in detail above, Plaintiffs and their counsel obtained a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement. Consequently, "[Plaintiffs'] Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Numismatic Guaranty Corp.*, 2008 WL 649124, at *11.

### (b)     *Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement*

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *accord Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007). Here, this Settlement was achieved through an experienced mediator, and Plaintiffs' Counsel "are capable attorneys with experience in litigation of this nature," and "there is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement." *Id.* Accordingly, this factor favors preliminary approval. *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988) (giving "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.").

## PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

In sum, upon preliminary review, the Court finds the proposed Settlement is fair, reasonable, and adequate; otherwise meets the criteria for approval; and warrants issuance of notice to the Settlement Class. Accordingly, the proposed Settlement is preliminarily approved as set forth herein.

1.    **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable, and adequate to the Class, subject to further consideration at the Settlement Hearing to be conducted as described below.

2.    **Certification of the Settlement Class** – The Court hereby preliminarily certifies, for settlement purposes only, the following Settlement Class:

> **All persons and entities other than Defendants who held (of record or beneficially) common stock of Citrix Systems, Inc. at any time from March 8, 2022, up to and through September 30, 2022, both dates inclusive. Excluded from the Settlement Class are Defendants; members of their Immediate Families; any entity in which any Defendant had a controlling or partnership interest during the Settlement Class Period; any person who served as an Officer or Director of Citrix during the Settlement Class Period; and the successors, heirs, and assigns of any excluded person.**

3.    **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on **November 4, 2024 at 10:00 a.m**. in Courtroom 11-2, United States District Court for the Southern District of Florida, Wilkie D. Ferguson, Jr. United States Courthouse, 400 N. Miami Avenue, Miami, FL 33128, for the following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate to the Class, and should be approved by the Court; (b) to determine whether a Judgment substantially in the form attached as Exhibit B to the Stipulation should be entered

dismissing the action with prejudice against Defendants; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Class Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs, should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement. The Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") shall be given to Class Members as set forth in paragraph 5 of this Order.

4.      The Court may adjourn the Settlement Hearing without further notice to the Class and may approve the proposed Settlement with such modifications as the parties may agree to, if appropriate, without further notice to the Class.  The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means.   The Court reserves the right to enter the Judgment approving the Settlement regardless of whether the Court has approved the Plan of Allocation or any award of attorneys' fees or reimbursement of Litigation Expenses.

5.      **Retention of Claims Administrator and Manner of Giving Notice** – Class Counsel is hereby authorized to retain JND Legal Administration ("Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below.  Notice shall be given by Class Counsel as follows:

(a)      within five (5) business days of entry of this Order, Citrix shall provide or cause to be provided to the Claims Administrator in electronic format, such as an Excel spreadsheet, (at no cost to the Settlement Fund, Class Counsel, or the Claims Administrator) its

reasonably available lists (consisting of names and addresses) of the holders of Citrix common stock shares during the Class Period;

(b)      not later than twenty (20) business days after the date of entry of this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Notice and the Proof of Claim Form ("Claim Form"), substantially in the forms attached hereto as Exhibits 1 and 2, respectively (the "Notice Packet"), to be mailed by first-class mail to potential Class Members at the addresses set forth in the records provided by Citrix or in the records which Citrix caused to be provided, or who otherwise may be identified through further reasonable effort;

(c)      contemporaneously with the mailing of the Notice Packet, the Claims Administrator shall cause copies of the Notice and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded;

(d)      not later than ten (10) business days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit 3, to be published once in GlobeNewswire; and

(e)      not later than seven (7) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on the Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication.

6.      **Approval of Form and Content of Notice** – The Court (a) approves, as to form and content, the Notice, the Claim Form, and the Summary Notice, attached hereto as Exhibits 1, 2, and 3, respectively, and (b) finds that the mailing and distribution of the Notice and Claim Form and the publication of the Summary Notice in the manner and form set forth in paragraph 5 of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the

action, of the effect of the proposed Settlement (including the Releases to be provided thereunder), of Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses (including any application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Class), of their right to object to the Settlement, the Plan of Allocation and/or Class Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses (including any reimbursement to any Plaintiff), of their right to exclude themselves from the Class, and of their right to appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules.  The date and time of the Settlement Hearing shall be included in the Notice and Summary Notice before they are mailed and published, respectively.

7.      **<u>Nominee Procedures</u>** – Brokers and other nominees who purchased or otherwise acquired Citrix common stock shares during the Class Period for the benefit of another person or entity shall: (a) within seven (7) calendar days of receipt of the letter, request from the Claims Administrator sufficient copies of the Notice Packet to forward to all such beneficial owners/purchasers and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners/purchasers; (b) within seven (7) calendar days of receipt of the letter, request from the Claims Administrator the link to the location hosting the electronic Notice Packet and, within seven (7) calendar days of receipt, email the link to beneficial owners/purchasers for whom valid email addresses are available; or (c) within seven (7) calendar days of receipt of the letter, send a list of the names, addresses, and/or email addresses of all such beneficial owners/purchasers to the Claims Administrator in which event the Claims Administrator

shall promptly mail the Notice Packet to such beneficial owners/purchasers.  Where the Claims Administrator receives a valid email address, they shall email the link to the location of the electronic Notice Packet to beneficial owners/purchasers.  Upon full compliance with this Order, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with this Order, in an amount not to exceed $0.05 plus postage at the current pre-sort rate used by the Claims Administrator per Notice Packet; or $0.05 per Notice Packet transmitted by email; or $0.05 per name, mailing address, and email address (to the extent available) provided to the Claims Administrator, by providing the Claims Administrator with proper documentation supporting the expenses for which  reimbursement is sought.  Such properly documented expenses incurred by nominees in compliance with the terms of this Order shall be paid from the Settlement Fund, with any disputes as to the reasonableness or documentation of expenses incurred subject to review by the Court.

8.  **Participation in the Settlement** – Class Members who wish to participate in the Settlement and be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Claim Forms must be postmarked or electronically submitted no later than one hundred twenty (120) calendar days after the Notice Date.  Notwithstanding the foregoing, Class Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Class.  By submitting a Claim, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim and the subject matter of the Settlement.

9.  Each Claim Form submitted must satisfy the following conditions: (a) it must be properly completed, signed, and submitted in a timely manner in accordance with the provisions of the preceding paragraph; (b) it must be accompanied by adequate supporting documentation for

the transactions and holdings reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement, or such other documentation as is deemed adequate by Class Counsel or the Claims Administrator; (c) if the person executing the Claim Form is acting in a representative capacity, a certification of his, her, or its current authority to act on behalf of the Class Member must be included in the Claim Form to the satisfaction of Class Counsel or the Claims Administrator; and (d) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

10.     Any Class Member that does not timely and validly submit a Claim Form or whose Claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her, or its right to share in the Net Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders, and judgments in the action relating thereto, including, without limitation, the Judgment and the Releases provided for therein, whether favorable or unfavorable to the Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Plaintiffs' Claims against each and all of the Defendants' Releasees, as more fully described in the Stipulation and Notice.  Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in paragraph 8.

11.     **Exclusion From the Class** – Any member of the Class who wishes to exclude himself, herself, or itself from the Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: (a) any such request for exclusion from the Class must be mailed or delivered such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing, to JND Legal Administration at the address provided

in the Notice; and (b) each request for exclusion must (i) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) state that such person or entity "requests exclusion from the Class in *Juan A. Vargas v. Citrix Systems, Inc.*, Case No. 0:22-cv-62327-RAR"; (iii) state the number of Citrix common stock shares that the person or entity requesting exclusion held (of record or beneficially), purchased/acquired, and/or sold during the Class Period, as well as the dates and prices of each such purchase/acquisition and sale; and (iv) be signed by the person or entity requesting exclusion or an authorized representative.  A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above or is otherwise accepted by the Court.

12.     Upon receiving any request for exclusion, Class Counsel or the Claims Administrator shall promptly provide copies of such request(s) to Defendants' Counsel within five (5) business days after receiving any request for exclusion.

13.     Any person or entity who or which timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Class shall not be a Class Member, shall not be bound by the terms of the Settlement or any orders or judgments in the action, and shall not receive any payment out of the Net Settlement Fund.

14.     Any Class Member who or which does not timely and validly request exclusion from the Class in the manner stated in this Order: (a) shall be deemed to have waived his, her, or its right to be excluded from the Class; (b) shall be forever barred from requesting exclusion from the Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation and Settlement and all proceedings, determinations, orders and judgments in the action, including, but not limited to, the Judgment and the Releases provided for therein, whether favorable or unfavorable to the Class; and (d) will be barred from commencing, maintaining, or prosecuting

any of the Released Plaintiffs' Claims against any of the Defendants' Releasees, as more fully described in the Stipulation and Notice.

15.    Any Person who is excluded from the Class by virtue of having submitted a valid and timely request for exclusion may, at any point up to the day of the Settlement Fairness Hearing, submit a written revocation of request for exclusion following the same instructions in Paragraph 11 above.

16.    **<u>Appearance and Objections at Settlement Hearing</u>** – Any Class Member who does not request exclusion from the Class may enter an appearance in the action, at his, her, or its own expense, individually or through counsel of his, her, or its own choice, by filing with the Clerk of Court and delivering a notice of appearance to both Class Counsel and Defendants' Counsel, at the addresses set forth in paragraph 17 below, such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing, or as the Court may otherwise direct.  Any Class Member who does not enter an appearance will be represented by Class Counsel.

17.    Any Class Member who does not request exclusion from the Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, and/or Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses (including reimbursement of the reasonable costs and expenses to Plaintiffs) and appear and show cause, if he, she, or it has any cause, why the proposed Settlement, the proposed Plan of Allocation, and/or Class Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses (including reimbursement to Plaintiffs) should not be approved; provided, however, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses unless that person or entity has filed a written objection with the Court and served copies of such objection on Class Counsel and Defendants' Counsel at

the addresses set forth below such that they are received no later than twenty-one (21) calendar days prior to the Settlement Hearing.  Class Counsel and Defendants' Counsel shall promptly furnish each other with copies of any objections that they receive.

| Clerk's Office | Lead Counsel | Defendants' Counsel |
|---|---|---|
| United States District Court for the Southern District of Florida Clerk of the Court 400 North Miami Avenue, Room 8N09 Miami, FL 33128 | Pomerantz LLP Jeremy A. Lieberman, Esq. 600 Third Avenue, 20th Floor New York, NY 10016-1917<br><br>Wohl & Fruchter LLP Joshua E. Fruchter 25 Robert Pitt Drive, Suite 209G Monsey, NY 10952 | Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A. Amy L. Drushal 101 Kennedy Blvd., Ste 2700 Tampa, FL 33602<br><br>Goodwin Procter LLP Deborah S. Birnbach 100 Northern Avenue Boston, MA 02210 |

18.     Any objections, filings and other submissions by the objecting Class Member: (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; (c) state the number of times the Class Member and/or his, her, or its counsel has filed an objection to a class action settlement in the last five years, the nature of each such objection in each case, the jurisdiction in each case, and the name of the issuer of the security or seller of the product or service at issue in each case; and (d) must include documents sufficient to prove membership in the Class, including the number of Citrix common stock shares that the Class Member held (of record or beneficially), purchased/acquired, and/or sold during the Class Period, as well as the dates and prices of each such purchase/acquisition and sale.  Objectors who enter an appearance and desire to present evidence at the Settlement Hearing in support of their objection must include in their written objection or

notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

19.     Any Class Member who or which does not make his, her, or its objection in the manner provided herein shall be deemed to have waived his, her, or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses (including reimbursement to Plaintiffs) and shall be forever barred and foreclosed from objecting to the fairness, reasonableness or adequacy of the Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses (including reimbursement to Plaintiffs), or from otherwise being heard concerning the Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses in this or any other proceeding.

20.     **Stay and Temporary Injunction** – Until otherwise ordered by the Court, the Court stays all proceedings in the action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.  Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Lead Plaintiffs, and all other members of the Class, from commencing any and all of the Released Plaintiff's Claims against each and all of the Defendants' Releasees.

21.     **Settlement Administration Fees and Expenses** – The Escrow Agent may, at any time after entry of this Order and without further approval from Settlement Defendants or the Court, disburse at the direction of Class Counsel up to $500,000.00 for all reasonable costs incurred in identifying Class Members and notifying them of the Settlement and administering the Settlement.

22.     **Settlement Fund** – The contents of the Settlement Fund held by The Huntington National Bank (which the Court approves as the Escrow Agent), shall be deemed and considered

to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

23.     **Taxes** – Class Counsel is authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

24.     **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Plaintiffs, the other Class Members and Defendants, and the parties shall revert to their respective positions in the action as of June 25, 2024 (the date of the Memorandum of Understanding), as provided in the Stipulation.

25.     **No Liability of Defendants for Settlement Administration** – Except for the obligations to cooperate in the production of reasonably available information with respect to the identification of Settlement Class members from Defendants' shareholder transfer records and to assist in identifying persons to be excluded from the Settlement Class, in no event shall the Defendants or any Defendants' Releasees have any responsibility for the administration of the Settlement, and neither the Defendants nor any of the Defendants' Releasees shall have any obligation or liability to the Plaintiffs, Plaintiffs' Releasees, Class Counsel, or the Settlement Class in connection with such administration.

26.     **Notice to Government Officials** – Defendants shall take reasonable steps to complete service promptly on the appropriate federal and state government officials of all notices required under the Class Action Fairness Act, 28 U.S.C. § 1715, and shall thereafter notify Class Counsel as to completion of such service.

27.     **Use of this Order** – Neither this Order, the Memorandum of Understanding, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Memorandum of Understanding and the Stipulation, nor any proceedings taken pursuant to or in connection with the Memorandum of Understanding, the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Amended Complaint would not have exceeded the Settlement Amount, or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred

to for any other reason as against any of the Plaintiffs' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; provided, however, that if the Stipulation is approved by the Court, the parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

28.     **Supporting Papers** – Class Counsel shall file and serve the opening papers in support of the proposed Settlement, the Plan of Allocation, and Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses (including reimbursement to Plaintiffs) no later than thirty-five (35) calendar days prior to the Settlement Hearing; and reply papers, if any, shall be filed no later than seven (7) calendar days prior to the Settlement Hearing.

29.     The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of July, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**