**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Austin P. Van (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Co-Lead Attorneys for Lead Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GEORGE MESSIHA and JUAN A. VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITRIX SYSTEMS, INC., ROBERT M. CALDERONI, NANCI E. CALDWELL, MURRAY J. DEMO, THOMAS E. HOGAN, MOIRA A. KILCOYNE, ROBERT E. KNOWLING, JR., PETER J. SACRIPANTI, and J. DONALD SHERMAN,<br><br>Defendants. | Case No. 0:22-cv-62327-RAR<br><br>**CLASS ACTION**<br><br>Hearing Date: November 4, 2024<br>Time: 10:00 AM<br>Judge: Honorable Rodolfo A. Ruiz II<br>Courtroom 11-2 (Ferguson) |

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS, AND INCORPORATED MEMORANDUM OF LAW**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

- i -

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

**PLEASE TAKE NOTICE** that pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice, dated July 22, 2024 (ECF No. 81) (the "Preliminary Approval Order"), on November 4, 2024 at 10:00 a.m., in the courtroom of the Honorable Rodolfo A. Ruiz II, United States District Judge for the Southern District of Florida, located at Wilkie D. Ferguson, Jr. United States Courthouse, 400 N. Miami Avenue, Miami, FL 33128, Courtroom 11-2, Lead Plaintiffs Juan A. Vargas and George Messiha, and additional Plaintiff Brandon Nuckel ("Plaintiffs") will, and do, move this Court, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(g), for an Order granting:  (1) final certification of the proposed Settlement Class for settlement purposes only; (2) final approval of the proposed Settlement and the plan to allocate the settlement proceeds; and (3) final approval of the form, manner, and content of the notice of the Settlement that was delivered to the Settlement Class.

This motion is based on the following memorandum of points and authorities; the Declaration of Austin P. Van and all exhibits attached thereto; all records and papers on file in this action; and any argument offered at a hearing on this motion.

Dated:   September 30, 2024                    Respectfully submitted,

**POMERANTZ  LLP**

*/s/ Austin P. Van*
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Telephone: (845) 290-6818

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Co-Lead Counsel for the Proposed Class*

**MILLER SHAH LLP**
Nathan C. Zipperian
Jayne A. Goldstein
2103 N. Commerce Pkwy.
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
nczipperian@millershah.com
jagoldstein@millershah.com

*Liaison Counsel for the Proposed Class*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................ 1

II.  OVERVIEW OF THE LITIGATION ............................................................. 4

III.  STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ..... 4

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................ 6

    A.  Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class ............................................................................................................ 6

    B.  The Settlement is Entitled to a Presumption of Fairness Because It Arose from Arm's-Length Negotiations Among Experienced Counsel ................................... 8

    C.  The Settlement Relief Provided for The Settlement Class Is Adequate ................ 9

        1.  The Settlement Amount is Within the Range of Reasonableness.............. 9

        2.  The Costs, Risks, and Delay of Trial and Appeal.................................... 10

        3.  Other Factors Established by Rule 23 Support Preliminary Approval ..... 14

    D.  All Settlement Class Members are Treated Equitably .......................................... 16

    E.  The Remaining Eleventh Circuit Factors Strongly Support Preliminary Approval ............................................................................................................. 18

        1.  The Stage of Proceedings at Which Settlement was Achieved ............... 18

        2.  Experienced Counsel and a Mediator's Opinions Favor Final Approval of the Settlement ................................................................................... 19

        3.  The Substance and Amount of Opposition to the Settlement Favors Final Approval of the Settlement.............................................................. 20

V.  THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED........................... 20

VI.  THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ................... 21

VII.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................. 22

VIII.  CONCLUSION.................................................................................................. 24

LOCAL RULE 7.1(a)(3) CERTIFICATION ................................................................ 24

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
  2002 WL 1162422 (S.D. Fla. May 7, 2002) .........................................................20

*Atkinson v. Wal-Mart Stores, Inc.*,
  2011 WL 6846747 (M.D. Fla. Dec. 29, 2011).....................................................15

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ................................................................... *passim*

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
  2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ..............................................11, 23

*City of Omaha Police & Fire Ret Sys. v. LHC Grp.*,
  2015 WL 965693 (W.D. La. Mar. 3, 2015) ..........................................................23

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .............................................................................19

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2017 WL 7798110 (S.D. Fla. Dec. 18, 2017)......................................................15

*Francisco v. Numismatic Guar. Corp. of Am.*,
  2008 WL 649124 (S.D. Fla. Jan. 31, 2008).....................................................18, 19

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
  2019 WL 2249941 (S.D. Fla. May 24, 2019) ......................................................18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)...............................................................................................11

*Hutton ex rel. MasTec, Inc. v. Mas*,
  2006 WL 8430549 (S.D. Fla. Dec. 12, 2006) ......................................................18

*IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................................10

*In Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) ...........................................................................18

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v.
  BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012)....................................13

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016), *amended on other grounds*,
  2016 WL 6091521 (N.D. Cal. Oct. 19, 2016)........................................................16

*In re Catalina Mktg. Corp. Sec. Litig.*,
  2007 WL 9723529 (M.D. Fla. July 9, 2007) ............................................17, 22, 23

*In re Checking Acct. Overdraft Litig.*,
  2013 WL 11319392 (S.D. Fla. Aug. 5, 2013)..........................................................10

*In re Checking Acct. Overdraft Litig.*,
  2014 WL 11370115 (S.D. Fla. Jan. 6, 2014) .............................................................4

*In re Checking Acct. Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011)...............................................................................9

*In re Checking Acct. Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................11

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ..................................................................................16

*In re China Med. Corp. Sec. Litig.*,
  2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ...........................................................9

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ..................................................................................18

*In re Health Ins. Innovations Sec. Litig.*,
  2020 WL 10486665 (M.D. Fla. Oct. 21, 2020) ...........................................5, 6, 21

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021), *R. & R. adopted*, 2021 WL
  1186838 (M.D. Fla. Mar. 30, 2021)........................................................7, 10, 16, 18

*In re Healthsouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) ..........................................................................15

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................................................23

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................22

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...............................................................12, 22

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ........................................................................12

*In re OCA, Inc. Sec. & Deriv. Litig.*,
  2009 WL 512081 (E.D. La. Mar. 2, 2009) ..............................................................................13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................12

*In re Rayonier Inc. Sec. Litig.*,
  2017 WL 4535984 (M.D. Fla. Oct. 5, 2017) ..........................................................................22

*In re Terazosin Hydrochloride Antitrust Litig.*,
  2005 WL 8181045 (S.D. Fla. April 20, 2005) ........................................................................15

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) .................................................................................................4

*Ingram v. Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001).............................................................................................8

*Johnson v. New Destiny Christian Ctr. Church, Inc.*,
  324 F.R.D. 404 (M.D. Fla. Jan 2, 2018). ............................................................................5, 6

*Morgan v. Pub. Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016) .................................................................................8, 9

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................................................19

*Pritchard v. APYX Med. Corp.*,
  2020 WL 6940765 (M.D. Fla. Nov. 6, 2020) ....................................................................17, 18

*Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016), *aff'd*, 2017 WL 6398014 (6th Cir. Nov.
  27, 2017) ..............................................................................................................................14

*Ret. Sys. v. S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019)..............................................................................................6

*Reyes v. AT&T Mobility Servs., LLC*,
  2013 WL 12219252 (S.D. Fla. June 21, 2013) ......................................................................15

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...............................................................................12

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014) ..........................................................................8, 9

*Strube v. Am. Equity Inv. Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005) .......................................................................10, 20

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ..............................................11, 13, 23

*Trief v. Dun & Bradstreet Corp.*,
840 F. Supp. 277 (S.D.N.Y. 1993) ..........................................................................13

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ...................................................................................18

*Vinh Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................................................17

*Warren v. City of Tampa*,
693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989) ...........19

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ...............................................................................15

**Statutes**

15 U.S.C. § 77z-1(a)(4)...............................................................................................18

15 U.S.C. § 78u- 4(a)(4) .............................................................................................18

Private Securities Litigation Reform Act...........................................................2, 3, 18

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**Other Authorities**

5 James Wm. Moore, *Moore's Federal Practice* § 23.164[4].....................................19

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements—2022
Review and Analysis* (Cornerstone Research 2023)...........................................2, 10

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92
    N.Y.U. L. Rev. 937, 951 (2017) ............................................................................................15

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

In accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Juan A. Vargas and George Messiha, and additional Plaintiff Brandon Nuckel ("Plaintiffs"), individually and on behalf of the Settlement Class, respectfully submit this unopposed motion for: (1) final approval of the proposed Settlement resolving the Action in exchange for payment of $17.5 million in cash for the benefit of the Settlement Class (the "Settlement"), and (2) approval of the proposed plan of allocation of the proceeds of the Settlement.[1] Defendants do not oppose this motion.

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Plaintiffs are pleased to present for the Court's approval the proposed settlement of this securities class action. The Parties have reached an agreement to settle this Action[2] in exchange for a $17,500,000 all cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class. The proposed $17.5 million Settlement, reached only after protracted arm's-

---

[1] Unless otherwise defined, all capitalized terms have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 15, 2024 (the "Stipulation") (ECF No. 80-1). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Van Decl." are to the Declaration of Austin P. Van, filed herewith. Citations to "Segura Decl." are to the Declaration of Luiggy Segura, attached as **Exhibit A** to the Van Decl. Citations to "Fruchter Decl." are to the Declaration of Joshua E. Fruchter, attached as **Exhibit B** to the Van Decl. Citations to "Palestina Decl." are to the Declaration of Michael J. Palestina, attached as **Exhibit C** to the Van Decl. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs, filed herewith.

[2] For the sake of efficiency and judicial economy, Plaintiffs present this motion together with plaintiffs Mark Liebenthal and Pablo Legorreta (the "Delaware Plaintiffs"), who are plaintiffs in an action for breach of fiduciary duty based on overlapping facts currently pending in the Delaware Court of Chancery against Defendant Robert Calderoni, *Legorreta v. Calderoni*, C.A. No. 2024-0153-KSJM (the "Delaware Action"), as part of a global settlement of both actions. The Delaware Plaintiffs support the Settlement, and the Settlement will release all claims pending in the Delaware Action.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

length negotiations and based upon the recommendation of a well-regarded mediator, is not only fair, reasonable, and adequate, but is also an excellent result.

Substantively, this recovery represents approximately 3.9% of the amount of estimated damages available if Plaintiffs overcame all the obstacles to establishing liability, and completely prevailed on all of their loss causation and damages theories. However, Defendants[3] raised a number of arguments which could have significantly reduced or eliminated the total amount of potential damages. A recovery of at least 3.9% of estimated damages is an excellent result for the Settlement Class. In fact, it is well above settlements for similar securities class actions. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements—2022 Review and Analysis* (Cornerstone Research 2023), at 6, available at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf [hereinafter *Cornerstone Research—2022*] (finding a median settlement recovery of 3.6% overall in securities class actions in 2022). For these reasons, and as further discussed herein and in the Van Declaration, the Settlement is substantively fair.

The Settlement is also procedurally fair. At the time the Settlement was reached, Plaintiffs and Lead Counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. For example, Lead Counsel, *inter alia*: (1) conducted an extensive legal and factual investigation conducted of Defendants and their alleged violations of the securities laws; (2) drafted detailed pleadings, including the comprehensive and factually detailed operative Complaint; (3) successfully opposed Defendants' motion to dismiss and overcame the Private

---

[3] Defendants are Citrix Systems, Inc. ("Citrix" or the "Company"), Robert M. Calderoni, Nanci E. Caldwell, Murray J. Demo, Thomas E. Hogan, Moira A. Kilcoyne, Robert E. Knowling, Jr., Peter J. Sacripanti, and J. Donald Sherman (the "Individual Defendants" and collectively, with Citrix, "Defendants").

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

Securities Litigation Reform Act of 1995's ("PSLRA") heightened pleading standards; (4) participation in months of discovery, including review and analysis of thousands of documents, and responses to document requests; (5) consulted extensively with experts to evaluate potential damages; (6) drafted and exchanged formal mediation statements and exhibits containing detailed analyses of the strengths, risks, and potential issues in the litigation; (7) participated in arm's-length settlement negotiations, including a formal mediation session conducted by David M. Murphy, an experienced mediator at Phillips ADR Enterprises, P.C.; (8) prepared the initial draft of the Stipulation and supporting documents; and (9) worked with Plaintiffs' damages expert to craft the Plan of Allocation.  Additionally, the Delaware Plaintiffs' Counsel in the Delaware Action *inter alia*:  (1)  prepared and sent a demand to inspect the Company's books and records; (2) prepared and filed a Verified Complaint to Compel Inspection of Books and Records; (3) reviewed and analyzed over 1,000 pages of documents responsive to the demands and inspection action; (4) prepared and filed the Delaware Action; (5) prepared for mediation in this Action, including engaging a valuation expert and preparing a 24-page comprehensive mediation statement detailing their claims and legal and evidentiary support gathered from their exhaustive review of the Production, and a 10-page response to the other parties' briefing (both of which were provided to Lead Counsel in this Action); (6) attended and participated in the Mediation; and (7) participated in further settlement discussions and subsequent negotiations regarding the Settlement.  Palestina Decl., ¶3.  Accordingly, the Settlement is the result of arm's-length negotiations between informed and experienced counsel with the assistance of an experienced, neutral mediator.

As discussed in greater detail below, Plaintiffs and their counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Consequently, Plaintiffs respectfully request that the Court grant final approval.  Plaintiffs also

move for approval of the proposed Plan of Allocation of the Net Settlement Fund.  The Plan of Allocation was developed by Plaintiffs' consulting damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members.  No Settlement Class Member is favored over another under the proposed Plan, as all Settlement Class Members—including Plaintiffs—are treated in the same manner.  The Plan of Allocation is fair and reasonable and, as such, it too should be approved.

## II.   OVERVIEW OF THE LITIGATION

The Van Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action, and the nature of the claims asserted (Van Decl., ¶¶22-37); the negotiations leading to the Settlement (Van Decl., ¶¶34-37); the risks and uncertainties of continued litigation (Van Decl., ¶¶38-47); and the terms of the Plan of Allocation of the Net Settlement Fund (Van Decl., ¶¶64-70).  The Court is also respectfully referred to the Palestina Declaration for the procedural history of the Delaware Action.  Palestina Decl., ¶3.

## III.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) requires court approval for any settlement of a class action, and courts within this Circuit recognize that public policy strongly favors settlements, especially in complex class actions.  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."  *In re Checking Acct. Overdraft Litig.*, 2014 WL 11370115, at *7 (S.D. Fla. Jan. 6, 2014).

The standard for determining whether to grant final approval of a class action settlement is whether the settlement is fundamentally "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

With respect to Rule 23(e)(2), courts now consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

>   (A)     have the class representatives and class counsel adequately represented the class;
>
>   (B)     was the proposal negotiated at arm's-length;
>
>   (C)     is the relief provided for the class adequate, taking into account:
>
>   >   (i)     the costs, risks, and delay of trial and appeal;
>   >
>   >   (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   >
>   >   (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and
>   >
>   >   (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
>   (D)     does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendments, *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 324 F.R.D. 404, 904, 919 (M.D. FL Jan 2, 2018).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at 918. For this reason, the traditional Eleventh Circuit factors set out in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) for evaluating whether a class action settlement is fair, reasonable, and adequate under Rule 23 are still relevant to the analysis and even overlap with Rule 23(e)(2). *See In re Health Ins. Innovations Sec. Litig.*,

2020 WL 10486665, at *3, *11 (M.D. Fla. Oct. 21, 2020) (*Health Ins. I*) ("In the Eleventh Circuit,

the [*Bennett*] factors are also considered in determining whether to approve a settlement . . . ."), *R.*

*& R. adopted*, 2020 WL 10486666 (M.D. Fla. Nov. 19, 2020) (*Health Ins. II*).  The *Bennett* factors

are:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point
> on or below the range of possible recovery at which a settlement is fair, adequate
> and reasonable; (4) the complexity, expense and duration of litigation; (5) the
> substance and amount of opposition to the settlement; and (6) the stage of
> proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

In sum, although the specific factors by which a settlement is evaluated may have changed

in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-

action settlement is that it be fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2) advisory

committee notes to 2018 amendments (324 F.R.D. at 918).  As discussed below, the Settlement

meets the above requirements and warrants final approval.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class

counsel have adequately represented the class."  Here, there can be no dispute that Plaintiffs and

Lead Counsel adequately represented the Settlement Class.

First, Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement

Class.  Plaintiffs are without conflicts and their interest in obtaining the largest possible recovery

in this Action is aligned with the interests of other Settlement Class Members.  *See Monroe Cnty.*

*Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019) (finding adequacy where

"[p]laintiffs' interests in establishing Defendants' liability and maximizing the recovery are

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

aligned with the interests of absent Class members").  In addition, Plaintiffs directly contributed to the Action and the recovery by scrupulously overseeing the litigation, communicating regularly with Lead Counsel, reviewing pleadings, participating in discovery, including responding to discovery requests, producing documents to Lead Counsel with respect to their transactions in Citrix securities, and participating in settlement discussions.

Second, Plaintiffs retained counsel that are highly experienced in securities litigation, have a long successful track record of representing investors in such cases, (*see* ECF Nos. 19-8, 19-9 (Co-Lead Counsel's firm resumes)) and who have vigorously prosecuted Plaintiffs' claims.  As set forth in detail above and in the Van Declaration, Lead Counsel, among other things: (i) conducted an extensive legal and factual investigation of Defendants and their alleged violations of the securities laws; (ii) researched case law concerning the elements of the claims asserted; (iii) reviewed documents produced by Defendants; (iv) drafted the comprehensive and factually detailed Complaint; (v) in large part successfully opposed Defendants' motions to dismiss; (vi) consulted with experts; (vii) drafted a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected mediator; (viii) prepared the initial draft of the Stipulation and supporting documents; and (ix) worked with Plaintiffs' damages experts to craft the Plan of Allocation. Consequently, this factor supports final approval of the Settlement.

Based on the foregoing, it is clear that Plaintiffs and their counsel adequately represented the Settlement Class.  *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *7 (M.D. Fla. Mar. 23, 2021) (*Health Ins. III*) ("Rule 23(e)(2)(A) [] is satisfied because Lead Plaintiff and Lead Counsel have vigorously represented the Class" by, among other things, conducting "an exhaustive factual investigation . . . prior to filing the Complaint" "opposing Defendants' motion

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

to dismiss" and participating in "intensive [settlement] negotiations"), *R. & R. adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) (*Health Ins. IV*).

### B. The Settlement is Entitled to a Presumption of Fairness Because It Arose from Arm's-Length Negotiations Among Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length."  "The Court must consider whether there is any evidence the settlement was the product of collusion, by examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties."  *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001).  "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014).  "Moreover, the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016).

Here, the Parties' settlement negotiations did not commence until after Lead Counsel engaged in extensive investigation to understand the strengths and weaknesses of the case, substantially defeated Defendants' motion to dismiss, and obtained substantial fact discovery. Further, Lead Counsel participated in significant mediation efforts and vigorous arm's length settlement negotiations.  As noted above, the Settlement represents a global resolution of this matter and the Delaware Action and was achieved only after an all-day mediation session overseen by Mr. Murphy and subsequent negotiating through the mediator post-mediation.  As part of those discussions, the Parties prepared submissions concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis.  The negotiations focused on heavily disputed issues, which were explored in-depth and informed by the Delaware Action's substantial pre-suit discovery.  Thus, "[t]here is no evidence that fraud or collusion affected the

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

settlement in any respect." *Pub. Storage*, 301 F. Supp. 3d at 1248.  Accordingly, this factor weighs in favor of final approval.  *See In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive."); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

### C.  The Settlement Relief Provided for The Settlement Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).  As demonstrated below, each of these factors supports final approval of the Settlement.

### 1.  The Settlement Amount is Within the Range of Reasonableness

The second and third *Bennett* factors ask courts to consider the range of possible recovery and the point on or below the range of possible recovery at which settlement is fair, reasonable, and adequate. *Bennett*, 737 F.2d at 986. These factors are "easily combined." *Chase Bank*, 297 F.R.D. at 693.

The $17,500,000 Settlement Amount is well within the range of reasonableness to warrant final approval of the Settlement.  Here, Plaintiffs estimate that if they had *fully prevailed* at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' *best case scenario*—the total *maximum* damages would be approximately $453 million.

Thus, the $17,500,000 Settlement Amount represents approximately 3.9% of the total *maximum* damages *potentially* available. Conversely, if Defendants' arguments were accepted by the trier of fact, the maximum recoverable damages could have been drastically reduced or eliminated. A recovery of 3.9% is above the average recovery in similar situations. *See Cornerstone Research— 2022*, at 6 (finding a median settlement recovery of 3.6% overall in securities class actions in 2022); *IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years"); *see also Health Ins. III*, 2021 WL 1341881, at *8 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").

In light of these risks, among others, the Settlement Amount is well within the range of reasonableness, weighing in favor of final approval.

### 2. The Costs, Risks, and Delay of Trial and Appeal

In evaluating a settlement under Rule 23(e)(2)(C)(i), courts also consider "the costs, risks, and delay of trial and appeal."[4] The Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *see also In re Checking Acct. Overdraft Litig.*, 2013 WL 11319392, at *8 (S.D. Fla. Aug. 5, 2013)

---

[4] Similarly, the first and fourth *Bennett* factors look at "the likelihood of success at trial," and "the complexity, expense and duration of litigation," respectively. *Bennett*, 737 F.2d at 986; *see also In re Checking Acct. Overdraft Litig.*, 2013 WL 11319392, at *8 (S.D. Fla. Aug. 5, 2013) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").  The Court need not determine if the Settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."  *See In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011).

Here, there is no question that continued litigation would have been costly, risky, and protracted.  Courts have repeatedly noted that "[s]tockholder litigation is notably difficult and notoriously uncertain."  *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) ("A securities case, by its very nature, is a complex animal."). Indeed, Plaintiffs would have to obtain class certification, and *prove* their claims.  Overcoming these hurdles would be no small task, and Plaintiffs and Lead Counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiffs' claims through class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals.

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* ECF No. 79 (Preliminary Approval Motion) § VI), the class had not yet been certified at the time of settlement, and Plaintiffs are aware there is a risk the Court could disagree, or that the Class Period could later be shortened based on challenges of decisions related to falsity, negligence and/or loss causation.  *See*, *e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) ("[D]efendants must be afforded an opportunity before class certification to defeat the [fraud-on-the-market] presumption [of reliance] through evidence that an alleged misrepresentation did not actually affect the market price of the stock.").  Had Plaintiffs

failed to obtain class certification, or the proposed Class Period was truncated, the benefit to the

Settlement Class would have been substantially reduced or eliminated.  Moreover, assuming class

certification was achieved, the Court could revisit certification at any time—presenting a

continuous risk that this case, or particular claims, might not be maintained on a class-wide basis

through trial.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008)

(even if a class is certified, "there is no guarantee the certification would survive through trial, as

Defendants might have sought decertification or modification of the class").  Thus, the risks of

obtaining and maintaining class certification support approval of the Settlement in this case.  *In re*

*Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1554329, at *7 (S.D. Fla. Apr.

10, 2024) (noting that "maintaining class certification through trial is another over-arching risk"

which supported approval of settlement); *see also In re Marsh & McLennan Cos. Sec. Litig.*, 2009

WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("[T]he uncertainty surrounding class certification

supports approval of the Settlement.").  Moreover, there was a substantial risk that Plaintiffs would

be unable to prove their claims at trial.  Furthermore, Defendants made various loss causation

arguments during mediation, which if accepted by a jury, would have severely reduced, if not

eliminated, the amount of potentially recoverable damages.

Had the Action continued, Defendants would have no doubt argued at summary judgment

and trial that the *evidence* demonstrated that their public statements did not contain any material

misstatements or omissions, that Plaintiffs could not have proven loss causation, and that Plaintiffs

and the Settlement Class suffered no damages.  Plaintiffs would have to prevail on all of these

issues at trial, as well as the inevitable appeals that would follow, before they recovered anything.

And, of course, the ultimate outcome—many years in the future—would remain uncertain, even

if Plaintiffs prevailed at trial.  *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

1997) (reversing jury verdict of $81 million for plaintiffs); *see also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at \*38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Finally, given, among other things, the extensive discovery necessary to prove the case, and the significant expert testimony that would have been needed to establish liability, loss causation and damages, there is no doubt that continued prosecution of the Action would have been both time intensive and costly. *See In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at \*11 (E.D. La. Mar. 2, 2009) (noting continued litigation, including through discovery, class certification, trial and appeals, "would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement"); *Thorpe*, 2016 WL 10518902, at \*3 (noting "ongoing discovery and trial preparation would have substantially increased costs to the Class," which supported approval).

In sum, even if Plaintiffs prevailed after trial and appeals, there is no guarantee that they would have obtained a judgment greater than the $17.5 million Settlement.  There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery— or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."); *see also In re BankAtlantic*, 2011 WL 1585605, at \*38.  By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

### 3.    Other Factors Established by Rule 23 Support Preliminary Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors generally support—and certainly do not weigh against—approval of the Settlement.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Here, JND Legal Administration ("JND")—the Court-approved Claims Administrator—will process claims under the guidance of Lead Counsel, provide claimants with an opportunity to cure any deficiency in their claim or request review of any denial of their claim, and, ultimately, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, after submission and Court-approval of Plaintiffs' distribution motion. This type of claims processing is standard in securities class action settlements and is effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[5] *See N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement with similar distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

---

[5] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* ECF No. 80-1 (Stipulation), ¶11.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

Second, Lead Counsel is applying for an award of a percentage of the common fund for attorneys' fees in the amount of 33.3% to compensate counsel for their services rendered on behalf of the Settlement Class.  As discussed in detail in the accompanying Fee Brief, the proposed attorneys' fee award of 33.3% of the Settlement Fund plus interest is reasonable in light of the substantial work and efforts of Lead Counsel, the risks they faced in the litigation, the results achieved, and awards in similar complex cases.  *See*, *e.g.*, *Reyes v. AT&T Mobility Servs.*, *LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit."); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6-7 (M.D. Fla. Dec. 29, 2011) (awarding "customary fee" of 33.3% of $2,020,000); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (affirming 33⅓% award of $40 million); *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 8181045, at *4-5 (S.D. Fla. April 20, 2005) (awarding fees of 33⅓% of settlement of over $70 million).[6]

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the Company's common stock, request exclusion (or "opt out") from the Settlement.  This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4

---

[6] *See also* Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (2017) (finding that, over a four year period, the mean fee award in the Eleventh Circuit was 30% and the median award was 33%); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35% of $25 million and stating, "[c]ourts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund") (citing cases).

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

(11th Cir. 2009); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D.
Cal. Aug. 25, 2016) (granting final approval of class action settlement and observing that such
"opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to
hijack a settlement in his or her own self-interest"), *amended on other grounds*, 2016 WL 6091521
(N.D. Cal. Oct. 19, 2016).

### D.  All Settlement Class Members are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members
equitably relative to one another.  Fed. R. Civ. P. 23(e)(2)(D); *see also In re Chicken Antitrust
Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (standard for approval of a plan of allocation
is the same as approving a settlement: whether it is "fair, adequate and reasonable and is not the
product of collusion between the parties"); *Health Ins. III*, 2021 WL 1341881, at *7 ("Finally,
Rule 23(e)(2)(D) is satisfied because the Settlement treats Settlement Class Members equitably
relative to one another via the Plan of Allocation.").

Here, the proposed Plan of Allocation, which was developed by Plaintiffs' damages expert
in consultation with Lead Counsel, is set forth in the Notice, and provides a fair and reasonable
method to allocate the Net Settlement Fund among Settlement Class Members who submit valid
Claim Forms.  *See* ECF No. 80-3 (Notice), ¶¶47-51.  Under the Plan of Allocation, the Claims
Administrator will calculate a Recognized Claim amount for each Settlement Class Member's
Settlement Class Period transactions.  *Id.*

The calculation of each Settlement Class Member's Recognized Claim under the Plan of
Allocation is explained in detail in the Notice and will be based on several factors, including when
Citrix securities were purchased and sold, the number of shares each Authorized Claimant held
through the closing of the Merger, and the total number of valid Claim Forms submitted.  The Plan

- 16 -

of Allocation reflects Plaintiffs' allegations that the alleged false and misleading statements in the Merger Proxy misled investors to consummate the Merger at an unfair price per share that did not adequately value Citrix, and caused economic harm to shareholders who were misled into approving the sale of their shares to Elliott and Citrix at an unfair and inadequate price. Accordingly, because all shares of Citrix common stock that were held through the closing of the Merger suffered the same per-share economic loss as a result of the alleged misstatements in the Proxy, it is fair and equitable to distribute the Settlement based on the number of shares each Authorized Claimant held through the closing of the Merger.  Under the Plan of Allocation, after at least six (6) months from the initial distribution, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and Litigation Expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion, contributing any remains to the Dade Legal Aid Foundation Inc., or such other private, non-profit, non-sectarian 501(c)(3) organization designated by Plaintiffs and approved by the Court.  The Net Settlement Fund will be allocated to Authorized Claimants—including Plaintiffs—on a *pro rata* basis based on the relative size of their Recognized Claims.  Similar plans have repeatedly been approved by courts in class action securities settlements.  *See*, *e.g.*, *In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007) ("Although the plan of allocation benefits some members of the class differently, it was developed to fairly account for the relative strength of individual claims and the timing of the relevant securities purchases."); *Pritchard v. APYX Med. Corp.*, 2020 WL 6940765, at *1-2 (M.D. Fla. Nov. 6, 2020); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).  Because the Plan of Allocation does not provide preferential treatment to any Settlement Class Member or to Plaintiffs, this factor supports final approval of the proposed

Settlement.[7]  *See, e.g., Health Ins. III*, 2021 WL 1341881, at *7  (approving plan of allocation and stating that "Rule 23(e)(2)(D) is satisfied because the Settlement treats Settlement Class Members equitably relative to one another via the Plan of Allocation"); *see also Pritchard*, 2020 WL 6940765, at *1-2.

### E.  The Remaining Eleventh Circuit Factors Strongly Support Preliminary Approval

#### 1.  The Stage of Proceedings at Which Settlement was Achieved

Courts also consider "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.  In weighing this *Bennett* factor, a Court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery was conducted. *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008); *see also Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) (noting that "early settlements are favored" such that "vast formal discovery need not be taken").  "[F]ormal discovery [is not] a necessary ticket to the bargaining table" (*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)), and courts have rejected the notion that such discovery must take place.[8]  *See, e.g., Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of securities class action settlement where there had been no "formal discovery" but "class counsel had conducted informal discovery by hiring private investigators and experts"); *Hutton ex rel. MasTec, Inc. v. Mas*, 2006

---

[7] Pursuant to the PSLRA, Plaintiffs also seek reimbursement of costs incurred as a result of their representation of the Settlement Class.  *See* 15 U.S.C. §§ 78u- 4(a)(4), 77z-1(a)(4).

[8] In *In re Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

WL 8430549, at *2 (S.D. Fla. Dec. 12, 2006) (approving settlement based on "extensive informal discovery, including consultation with accounting experts; and a review and analysis of MasTec's public disclosures and financial statements").

As discussed in detail above and in the Van Declaration, Plaintiffs and their counsel obtained a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement.  What is more, at mediation, Lead Counsel in this Action were privy to the Delaware Plaintiffs' mediation brief, which outlined the results of the more than 1,000 pages of inspection materials received by the Delaware Plaintiffs in the Delaware Action.  Consequently, Lead Counsel "had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Numismatic Guaranty Corp.*, 2008 WL 649124, at *11.

### 2. Experienced Counsel and a Mediator's Opinions Favor Final Approval of the Settlement

In determining whether the Settlement is fair, reasonable, and adequate, the Court, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *accord Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007).  As explained above, *see supra* at IV(B), the Settlement was negotiated by experienced counsel on both sides with the assistance of mediator.  Based on their extensive experience and expertise, with the benefit of a well-regarded mediator of complex litigation, all counsel strongly endorsed the Settlement as fair and reasonable and support final approval.  These recommendations favor the Settlement's final approval.  *See* 5 James Wm. Moore, *Moore's Federal Practice* § 23.164[4], LexisNexis (updated 2024) ("The more experience that class counsel possesses, the greater weight a court tends to attach to counsel's opinions ….."); s*ee also Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988) (giving "great weight

to the recommendations of counsel for the parties, given their considerable experience in this type

of litigation"), *aff'd*, 893 F.2d 347 (11th Cir. 1989). Deficiency concerns are typically grounded

in evidence of a previous relationship between the parties, outrageous attorneys' fees, or a class

that is sold short or bitterly divided by competing interests. Here, no such circumstances exist,

where this Settlement was achieved through an experienced mediator, and Lead Counsel "are

capable attorneys with experience in litigation of this nature," and "there is no evidence of any

kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the

terms of the proposed settlement." *Strube*, 226 F.R.D. at 703. Consequently, Lead Counsel's belief

in the fairness and reasonableness of the Settlement supports approval.

### 3.    The Substance and Amount of Opposition to the Settlement Favors Final Approval of the Settlement

While the deadline for filing objections or requesting exclusion is October 14, 2024, to

date, no objections to the Settlement or Plan of Allocation have been received, and no requests for

exclusion have been received. Segura Decl., ¶¶17-18; Van Decl., ¶¶14, 63. Such a favorable

reaction of the Settlement Class to the Settlement also supports approval. *Access Now, Inc. v.

Claire's Stores, Inc.*, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The fact that no

objections have been filed strongly favors approval of the settlement.").[9]

Accordingly, each of these factors favors approval of the Settlement.

## V.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's July 22, 2024 Preliminary Approval Order certified the Settlement Class for

settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 81 at 6-9, 18. There

have been no changes to alter the propriety of class certification for settlement purposes. Thus,

---

[9] Plaintiffs will file reply papers by October 28, 2024 addressing any objections or exclusions that may be received.

for the reasons stated in Plaintiffs' Preliminary Approval Motion (*see* ECF No. 79 § VI), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## VI.   THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The Court approved the proposed notice program in the Preliminary Approval Order, and Plaintiffs executed the notice program in accordance with the provisions therein.  Van Decl., ¶¶50-63.  Notice was given to potential Settlement Class Members via mailing and/or emailing Notice, the Settlement Website (www.citrixsystemsmergersettlement.com), and publication.[10]   As of September 27, 2024, 82,709 Notice Packets have been sent to potential Settlement Class Members, brokers, and/or nominee holders.  Segura Decl., ¶11.

On September 3, 2024, the Court-approved Summary Notice was transmitted once over the *GlobeNewswire*.  Segura Decl., ¶12.  The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice.  *See* Segura Decl., Exhibit B.

Finally, the Claims Administrator posted the Notice, Claim Form, Stipulation, Preliminary Approval Order, and other relevant documents online at the Settlement Website, and provided a toll-free telephone number for Settlement Class Members to call with any questions concerning the Settlement and/or request a Notice Packet.  Segura Decl., ¶¶13-14.  Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23.  *See*, *e.g.*, *Health Ins. II*, 2020 WL 10486666, at *3 (finding notice method adequate where the (i) notice and proof of claim is mailed by first class mail to settlement class members; (ii) summary notice is published

---

[10] The Settlement Website was established on or about August 16, 2024.  Segura Decl., ¶14.  From this website, potential Settlement Class Members can, *inter alia*, download copies of the Notice and Claim Form and submit claims online.  *Id.*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

once in *Investor's Business Daily* and transmitted once over the *PR Newswire*; and (iii) notice, summary notice, and claim form is posted on claim administrator's website).

## VII.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In the Preliminary Approval Order, the Court approved the Notice, which contains the Plan of Allocation.  Plaintiffs now request final approval of the Plan of Allocation.  Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to approval of the settlement as a whole—the plan must be fair, adequate, and reasonable.  *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4535984, at *1 (M.D. Fla. Oct. 5, 2017); *see also Catalina Mktg.*, 2007 WL 9723529, at *1.  "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *see also In re Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

Here, the proposed Plan of Allocation is set forth in the Notice posted on the Settlement Website.  *See* Segura Decl., ¶14.  Lead Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages consultant with the objective of equitably distributing the Net Settlement Fund to Authorized Claimants based on their respective alleged economic losses as a result of the alleged misstatements and omissions that were at issue in this Action.  The computations under the Plan of Allocation are a method to weigh the Claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.  Van Decl., ¶¶64-69.  The Plan of Allocation reflects Plaintiffs' allegations that the alleged false and misleading statements in the Merger Proxy misled investors to consummate the Merger at an unfair price per share that did not adequately value Citrix, and caused economic harm to shareholders who were misled into approving the sale of their shares to Elliott and Citrix at an unfair and

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

inadequate price.  Accordingly, because all shares of Citrix common stock that were held through the closing of the Merger suffered the same per-share economic loss as a result of the alleged misstatements in the Proxy, it is fair and equitable to distribute the Settlement based on the number of shares each Authorized Claimant held through the closing of the Merger.

Under the Plan of Allocation, an Authorized Claimant's total number of Recognized Merger Shares will be their Recognized Claim, and each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim as compared to the total Recognized Claims for all Authorized Claimants.  *See* Segura Decl., Exhibit A (Notice), ¶51.  The calculation of each Settlement Class Member's Recognized Claim under the Plan of Allocation is explained in detail in the Notice and will depend on the total number and amount of valid claims participating in the Settlement.

Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who allegedly suffered losses as a result of the conduct alleged in the Action.  *See City of Omaha Police & Fire Ret Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. La. Mar. 3, 2015) (approving plan of allocation where "[u]nder the Plan, each Class Member will receive his or her *pro rata* share of the funds based on the calculation of recognized losses"); *Carpenters Health & Welfare*, 2008 WL 11336122, at *5, *11 (approving substantially similar plan of allocation).  Moreover, to date, no Settlement Class Members have objected to the Plan of Allocation.  *See Catalina Mktg.*, 2007 WL 9723529, at *1 (finding that no objections supports approval of the plan of allocation); *Thorpe*, 2016 WL 10518902, at *4 (same); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

the plan of allocation as fair and adequate.").  The Court should, therefore, approve the Plan of Allocation.

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class for the purposes of settlement. [11]

## <u>LOCAL RULE 7.1(a)(3) CERTIFICATION</u>

Lead Counsel has conferred with Defendants' Counsel regarding the requested relief and Defendants do not oppose Plaintiffs' motion.

---

[11] A [Proposed] Order and Final Judgment Approving Class Action Settlement was previously submitted.  ECF No. 80-6.  A proposed order will be submitted with Plaintiffs' reply papers by October 28, 2024, after the deadline for objecting to the motion and requesting exclusion from the Settlement Class has passed.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

Dated:  September 30, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Austin P. Van*
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Co-Lead Counsel for the Proposed Class*

**MILLER SHAH LLP**
Nathan C. Zipperian
Jayne A. Goldstein
2103 N. Commerce Pkwy.
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
nczipperian@millershah.com
jagoldstein@millershah.com

*Liaison Counsel for the Proposed Class*

- 25 -

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS